WILLIAM GEDIMAN *vs.* COMMISSIONER OF PUBLIC WORKS OF BOSTON.

Suffolk. April 8, 1954. — September 27, 1954.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Municipal Corporations,* Employees. *Public Employment. Civil Service.*

A schedule established by the director of civil service and approved by the commission, furnishing by short descriptive titles a large number of classes or grades of positions in the service of a large city into which existing positions could be fitted according to their respective duties, was a sufficient "classification plan" within G. L. (Ter. Ed.) c. 31, § 2A (b), as appearing in St. 1951, c. 302, although it did not itself specifically name every existing position and assign it to one of the

classes or grades, but left much of such allocation to be done by the director to "make such plan effective." [661–662]

A certain provision included in a municipal compensation plan under the heading "Starting Salary and Increments," that an employee should not receive an increment without a recommendation and certificate of satisfactory service by his department head, had reference only to increments regularly accruing under the plan to employees already fully subject to its operation and was not applicable to increases of compensation resulting from the process of originally covering employees into the plan pursuant to other provisions entitled "Initial Adjustments to Compensation Plan." [662–663]

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on May 19, 1953, and transferred to the Superior Court.

The case was heard in the Superior Court by *Kirk,* J.

*William H. Kerr,* for the respondent.

*James W. Kelleher,* (*Charles Presser* with him,) for the petitioner.

QUA, C.J.    The objects of this petition for a writ of mandamus are to secure recognition of the petitioner as holding in the public works department of the city a position classified as "Head Clerk," and to recover for the period beginning April 1, 1952, the difference between the salary established for a "Head Clerk" and that which the petitioner has been receiving in the clerical position which he held before the adoption of the new classification and compensation plans hereinafter referred to.    From a judgment in favor of the petitioner the respondent appeals.

It is provided by G. L. (Ter. Ed.) c. 31, § 2A (b), as appearing in St. 1951, c. 302,[1] that it shall be the duty of the director of civil service to "Establish, with the approval of the commission, classification plans for positions in every city and town which are subject" to the chapter, and "Upon the establishment of such classification plan" to make it "effective."    It is provided that "after the establishment of such classification it shall be final," and that the city or town shall "establish a compensation plan with a minimum

---

[1] Further provisions contained in St. 1953, c. 286, § 1, do not affect this case.

and maximum salary, in accordance with the class and grade, for each position . . . ."

Accordingly, the director, under date of June 12, 1952, submitted to the civil service commission for its approval a so called "Boston Classification Plan"[1] which contained a list or schedule of approximately four hundred sixty classes or grades of positions in the "official service" and many additional classes or grades in the "labor service." In this list or schedule each class or grade bore a short descriptive title intended to indicate in a general way the nature of the work to be performed. There was also a long schedule showing by their then titles what existing positions would be covered into the new titles without raising their grades and therefore without examination. There was a schedule or table for determining whether changes in title of various clerical positions to titles of higher grade would involve examinations, and if so whether such examinations would be qualifying or competitive. In addition to the two schedules last mentioned the plan contains two hundred seventy-nine special instances where for reasons particularly stated in each instance a change to the new designation would not require examination, and twenty-six special instances where a qualifying examination only would be required. The plan contained a paragraph stating that on June 23 each employee affected would be notified of the allocation of his position under the plan with a notation that he might request the director to review such allocation if he believed it incorrect. Department heads were to have similar rights of review. In either case an appeal might be taken to the commission. See G. L. (Ter. Ed.) c. 31, § 2 (b), as appearing in St. 1945, c. 725, § 1. The commission approved the plan on July 22.

In the meantime on June 23, the director notified the petitioner that it was proposed to allocate his position to the grade in the plan entitled "Senior Account Clerk," and

[1] From statements contained in the plan it would seem that this plan was intended as a general one for the city departments to be in addition to plans previously completed for various separate municipal institutions.

that·if he requested a review of that proposed allocation action would be suspended pending a hearing. On the same day a list of the allocations in the respondent's department was sent to the respondent with notice of the right of review. The petitioner did request a review, contending that his duties were such that he was entitled to be allocated to the grade of "Head Clerk." Under date of November 28, 1952, the director notified both the petitioner and the respondent that after review the petitioner's position had been allocated to the grade of "Head Clerk." The commission declined jurisdiction of an appeal by the respondent from this decision in accordance with a rule permitting such action where the appeal is not received within thirty days of notice of the decision. On December 3, 1952, the city established, "as of April 2, 1952," a compensation plan as required by the statute, with a minimum and maximum salary in accordance with the class and grade for each position included in the classification plan. See also G. L. (Ter. Ed.) c. 41, § 108A, as appearing in St. 1948, c. 351.

As we understand the respondent's argument, he contends that the plan established by the director and approved by the commission on July 22 was not a classification plan within the meaning of the statute because it did not name each employee or each position and specifically assign him or it to a designated class. We think, however, that "classification plans for positions," to quote the words of the statute, need not go so far as to allocate each present employee or position to his or its class in the new scheme. In a city like Boston that would be a long and complicated process. The record shows that after nearly two years that process had not been wholly completed. It seems to us that a classification plan for positions is a plan or scheme according to which positions can be classified. The plan here questioned was adequate for that purpose. It supplied by descriptive titles a large number of classes or grades into which existing positions could be fitted according to their respective duties. When this should be done and the correlative compensation plan should be put into

effect all positions involving substantially like duties and responsibilities would, at least in theory, be included in the same class or grade with the same salary rates. But the plan went farther than this. In addition to the two hundred seventy-nine special instances previously mentioned, it listed over four hundred positions, with their titles under the new plan, where no increase in grade was involved, and it provided a scheme for determining what kind of examination would be required where an increase was involved. No doubt after the establishment of the classification plan a great deal of actual allocating remained to be done by the director to "make such plan effective" (in the words of the statute) so that "after the establishment of such classification it shall be final." We have carefully considered all arguments advanced, and we are of opinion that the classification plan dated June 12, 1952, and approved by the commission on July 22, 1952, complies with the statute and is valid, and that the respondent is bound by it and by the allocations of the director in making it effective.

The respondent further argues that the petitioner is not in any event entitled to recover the additional pay that would otherwise accrue to him as a "Head Clerk" since the compensation plan went into effect because of the provision in Rule 5 (f) of that plan which reads, "Anything *in this rule*[1] to the contrary notwithstanding, no employee shall become entitled to an increment until his department head [the respondent in this instance] shall, in a writing to the Mayor, recommend such increment and certify that the employee's service has been satisfactory." In our opinion, however, this provision applies only to "increments" regularly accruing under the compensation plan to employees who have already come fully under the operation of that plan. The title of Rule 5 is "Starting Salary and Increments." It fixes the "Starting Salary" and the subsequent "Step-rate Increments" and "Longevity Increments" of appointees to positions. The process of originally covering

[1] Emphasis supplied.

existing employees into the compensation plan is governed, we think, by Rule 12 entitled "Initial Adjustments to Compensation Plan." This rule makes provision for the adjustment of existing salaries to the new schedules as of April 1,[1] 1952, but contains a provision that if this should result in a salary increase of more than $9.58 on a weekly basis, the employee shall be given an increase equivalent to $9.58 on a weekly basis. This provision is supplemented by Rule 13, entitled "Subsequent Increments to Employees Subject to $9.58 Limitation" by which an employee whose increase upon the adoption of the plan has been limited by Rule 12 to $9.58 on a weekly basis is to receive annually an increase of that amount (or such part thereof as may be necessary) "until he reaches the step of the grade to which his service in the position, combined with his service with the city in any capacity, entitles him." Rules 12 and 13 contain no reference to any recommendation by the department head. We think that the annual increases of $9.58 weekly required to bring an employee originally into full conformity with the plan are not the increments referred to in Rule 5 (f) which require the recommendation of the department head.

The respondent objects only to the allowance of any damages and not to the amount awarded. We therefore assume that the amount was correctly determined in the Superior Court.

*Judgment affirmed.*

---

[1] April 2 for employees paid weekly.