JOSEPH A. CROWLEY *vs.* CITY OF BOSTON.

Suffolk.   February 7, 1961. — April 3, 1961.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Civil Service. Municipal Corporations,* Employees. *Waiver. Interest.*

A notice sent to a city employee informing him of his allocation in a classification and compensation plan and stating in effect that he might request a review of his allocation within fourteen days was not a part of the plan and did not preclude his securing a review upon a request made long after the expiration of the fourteen days. [346–347]

A civil service employee of a city, whose position was classified as that of senior clerk upon the establishment of a classification and compensation plan in the city and who for a period worked in and was paid the salary of that position, was entitled, when it was ultimately determined that his position should have been classified as that of senior traffic investigator, a position paying a higher salary, to payment of additional salary even though "no appropriation was available" therefor in that period; and such additional salary was not a gratuity. [347]

A civil service employee of a city, who was notified by the director of civil service upon the establishment of a classification and compensation plan in the city that his position was classified as senior clerk and who worked as and was paid the salary of senior clerk until it was ultimately determined that his position should have been classified as senior traffic investigator, a position paying a higher salary, did not, by failing to seek review of his original classification for more than two years, waive his right to recover additional salary where it appeared that the plan did not limit the time within which he might request a review. [347]

Under the rules of a classification and compensation plan established under civil service by a city on December 3, 1952, "effective as of April

2, 1952," and providing that an employee in the service of the city "continuously since March 31, 1952," should be "allocated to the step of the grade to which he would have been entitled on March 31, 1952, if the number of years served by him in the position in which he was serving immediately prior to his classification had been served after such classification," the date of "classification" under such provision was no later than December 3, 1952, respecting an employee of the city who began work in the traffic department in January, 1952, and was originally classified under the plan as a senior clerk, although in 1955, on review sought by him, it was determined that he should have been classified as a senior traffic investigator. [348–349]

A certain provision included in a municipal classification and compensation plan respecting annual increments to starting salaries, that an employee should not receive an increment without a recommendation and certificate of satisfactory service by his department head, precluded receipt of any increment for a period of several years by an employee who started work under an original classification as a senior clerk in the traffic department with the maximum rate of compensation for that position and continued in that position during such period without his department head making any such recommendation or certificate, although, at the end of such period, it was decided that he should have been classified as a senior traffic investigator and his beginning rate of compensation in the position of senior traffic investigator would have been less than the maximum rate for that position. [349–350]

A civil service employee of a city who was dilatory in asserting his right to a reclassification of his position under the city's classification and compensation plan and to additional salary accordingly was not entitled in the circumstances, in the absence of a demand, to interest on the additional salary prior to the date of the writ in an action brought by him against the city therefor after it had been determined that he was entitled to the reclassification. [350]

CONTRACT. Writ in the Superior Court dated May 14, 1957.

The action was heard by *Tomasello, J.*

*William H. Kerr,* for the defendant.

*Daniel J. Hourihan, (Joseph A. Crowley* with him,) for the plaintiff.

WHITTEMORE, J. The plaintiff's action for a balance of salary from April 2, 1952, to April 4, 1956, was tried on a case stated. The defendant has appealed under G. L. c. 231, § 96, from the order for judgment for the plaintiff in the amount of $1,904.93.

In June, 1952, a classification plan and correlative compensation plan were formulated by the director of civil service for certain civil service positions in the city of Bos-

ton under G. L. c. 31, § 2A, par. (b), as amended through
St. 1951, c. 302 (now further amended by St. 1953, c. 286,
§ 1, and St. 1954, c. 295, § 1). The plan was subject to the
approval of the civil service commission. The plan classi-
fied the plaintiff as senior clerk. At the time he was a civil
service employee in the traffic department under the title of
"clerk" and was paid weekly. His service in that position
had begun on January 14, 1952. The plan provided that
"On June 23, 1952, each employee affected will be notified
of the allocation of his position under the Plan with a nota-
tion that he may request the Director to review such alloca-
tion if he believes it is not correct. . . . The Director will
give a hearing to each employee who files a request for a
review of his allocation . . . in order to determine whether
any change should be made in the allocation. If any em-
ployee . . . is not satisfied with such determination by the
Director, he may appeal to the Civil Service Commission
for a review of the action taken."

The notice sent to the plaintiff on June 23, 1952, informed
him that "In order to make the plan effective, this alloca-
tion will be recorded in the office of the Division of Civil
Service. If, however, within fourteen days from the date
of this letter, a request is made for a review of your pro-
posed allocation, such action will be suspended until you are
given a hearing thereon. In order to expedite action, your
request should include a statement of the reasons for your
belief that the allocation is incorrect." The plaintiff did
not within fourteen days from June 23 request a review.

General Laws c. 31, § 2, provides that the commission
shall "(b) Hear and decide all appeals from any decision
or action of, or failure to act by, the director, upon appli-
cation of a person aggrieved thereby . . . ." At all times
material to the controversy a lawfully promulgated rule of
the commission provided that "The Commission may de-
cline to entertain any appeal from any decision of the
Director not received within thirty days of the date of the
giving of notice by the Director to the appellant, or in cases
of appeals regulated by statute within any lesser period
provided therein."

Crowley *v.* Boston.

On October 20, 1954, the plaintiff made written "appeal" of his allocation under the plan. The director on October 27, 1954, declined to act as "the time for appeals has elapsed." The plaintiff on November 15, 1954, appealed to the commission from the director's decision; this appeal was denied on January 27, 1955; the plaintiff thereafter asked reconsideration; on July 27, 1955, after a hearing, the commission "voted to accept . . . [the] late appeal and to grant . . . [the plaintiff] the allocation of senior traffic investigator . . . ."

No provision of the plan directly or by implication limited the time within which the employee might request a review by the director. The letter of June 23, 1952, was not a part of or prescribed by the plan. The only limitation on the right of review of the allocation lay in the commission's power to reject an appeal from the director's decision not received within thirty days of the date of notice of such decision.

As he is a civil service employee, the plaintiff's right to recover is not affected by the stated fact that in the years 1953 and 1954 "no appropriation was available." *Barnard* v. *Lynn*, 295 Mass. 144, 147. *Allen* v. *Lawrence*, 318 Mass. 210, 215. There is nothing in the city's contention that an additional payment to the plaintiff would be an unconstitutional gratuity. The compensation finally awarded was determined in accordance with the plan and that is the compensation which the city agreed to pay the plaintiff and for which he worked. The failure to seek review for more than two years was not a waiver by the plaintiff of his right to additional compensation. Compare *Phillips* v. *Boston*, 150 Mass. 491.

Neither party contends that the decision of the commission was intended to operate as an allocation effective only from and after July 27, 1955, or August 5, 1955.[1] We,

[1] On July 27, 1955, the secretary of the commission wrote the plaintiff, "I am directed to inform you that the Commissioners voted to accept your late appeal and to grant you the allocation of senior traffic investigator in the Boston Traffic Commission." On August 5, 1955, the director wrote to the defendant's traffic commissioner that "upon appeal . . . the Civil Service Commission has voted to allocate the following positions as set forth below: . . . Crowley, Joseph A. From Senior Clerk to Senior Traffic Investigator. Your records . . . should . . . be changed accordingly."

Crowley *v.* Boston.

therefore, do not reach the question of the power of the commission to make such an order. In the circumstances we construe the commission's decision as a determination, within its power, that the plaintiff was entitled to an original salary adjustment effective April 2, 1952.

Rule 12 of the plan provides, "Existing salaries shall be adjusted to the pay schedule effective . . . April 2, 1952, for weekly paid employees subject to the following terms and conditions . . . ." This rule was applicable. *Gediman* v. *Commissioner of Pub. Works of Boston,* 331 Mass. 658, 662–663. The classification plan put "Senior Clerk" in grade 13, and the pay schedule showed that the maximum rate for this grade was $68. The plaintiff immediately prior to April 2, 1952, had been paid $68.29 and this latter amount became his compensation as senior clerk under Rule 12 (g) which provides, "The compensation of any employee shall not, by reason of the establishment of the Compensation Plan, be reduced below that payable to him on April 2, 1952 . . . ." The plaintiff was paid at the rate of $68.29 through August 4, 1955.

The plaintiff in April, 1952, had more than twenty years' service, having been a full time employee since March 1, 1929. Therefore, under Rule 12 (a) read with Rule 5 (a), he was entitled to compensation from and after April 2, 1952, in the classification of senior traffic investigator (grade 17) at not less than the rate shown in column III of the schedule, that is $70.50.

Rule 12 (a)[1] also provides a longevity increment for the

---

[1] "A permanent full time employee in the service of the city continuously since March 31, 1952, shall be allocated to the step of the grade to which he would have been entitled on March 31, 1952, if the number of years served by him in the position in which he was serving immediately prior to his classification had been served after such classification; and he shall also be credited with the total number of years of his service with the city on March 31, 1952, provided, however, that if the aforesaid allocation and credit would result in a salary increase of more than $9.58 on a weekly basis such allocation and credit shall not be made, but such employee shall be given an increase equivalent to $9.58 on a weekly basis."

starting pay in the classification, determined by deeming the number of years served in the position "in which he was serving *immediately prior to his classification*" as though "*served after such classification*" (emphasis supplied). There is some basis for construing the date of "classification" as the date subsequent to April 2, 1952, at which classification was complete under the evolving plan. Rule 12 (a) uses the date of March 31, 1952, only for determining the length of service with the city. See also a letter of the director of September 19, 1952, to the traffic commissioner, which recognizes "a change in status . . . [taking] place since the allocation of the position." But whatever the precise meaning, we think that the date of "classification" cannot reasonably be construed as later than December 3, 1952, on which date "the defendant established, effective as of April 2, 1952, a compensation plan . . . ." A construction would be patently unreasonable to give the plaintiff a salary beginning April 2, 1952, at a rate determined by his longevity status on August 5, 1955. Inasmuch as the plaintiff's employment in the traffic department began in January, 1952, there is therefore no ground for computing his 1952 salary as senior traffic investigator on any basis except his service of more than twenty years with the city.

Increments to the starting salary in the new position are determined by Rule 5. Subrule (b) provides, "Every permanent full time employee shall, upon the completion of the first, also of the second, and also of the third year of service in the position, be advanced one increment." Subrule (f), however, provides, "Anything in this rule to the contrary notwithstanding, no employee shall become entitled to an increment until his department head shall, in a writing to the Mayor, recommend such increment and certify that the employee's service has been satisfactory." Subrule (f) is applicable. See *Gediman* v. *Commissioner of Pub. Works of Boston,* 331 Mass. 658, 662–663. At no time prior to March 27, 1956, did the plaintiff's department head in a writing to the defendant's mayor recommend or certify as required by Rule 5 (f).

The officials concerned appear to have construed the decision of the commission as an allocation effective August 5, 1955, for, beginning on that date and continuing through April 3, 1956, the city paid the plaintiff at the rate of $77.87 per week.[1]   Beginning April 4, 1956, the plaintiff was compensated at $80 a week, the maximum salary for grade 17.

The plaintiff in seeking whatever additional compensation is due him from April 2, 1952, invokes the letter of the plan and is bound by it.   So long as he was being paid at the maximum rate for class 13 there was no occasion for a recommendation and certification, for there could be no longevity increment.   But this did not waive the requirement of Rule 5 (f) for increments under the new classification.   The payments by the city at the higher rate show not a waiver of Rule 5 (f) but rather a different construction of the effect of the decision of July 27, 1955.

The facts therefore, on the case as presented, show the plaintiff entitled to $2.21 a week ($70.50 less $68.29) for the period for which he received less than $70.50.   This period was from April 2, 1952, to August 4, 1955, approximately 174 weeks.   We accept the defendant's computation of 174.4 weeks.   Thus the amount due is $385.42.   The defendant has asserted no right to recover any amount from the plaintiff.   We intend no suggestion.

The plaintiff is not entitled to interest for the period prior to the date of the writ.   Perhaps in the period between July 27, 1955, and May 14, 1957, the date of the writ, the plaintiff made unsuccessful demands on the city for his back pay.   But the only demand of which we are informed is the writ.   In view of the plaintiff's dilatoriness in asserting his rights we see no basis for awarding interest to compensate him for payments which were not paid as earned for the reason that there was no established legal basis for paying them.   As to interest from date of demand

---

[1] As of August 5, 1955, the plaintiff had served over three years in his position in the traffic department.   Hence under Rule 12 (a), if August 5, 1955, was the effective classification date, he was entitled to a base rate determined by over twenty years' service, plus three increments for years served in the particular position, but not more than $9.58.   Adding $9.58 to the old rate of $68.29 gives $77.87.

see *Ordway* v. *Colcord,* 14 Allen, 59; *Vaughan* v. *Lemoine,* 330 Mass. 83, 87.

The finding for the plaintiff is reduced to $385.42 and judgment for the plaintiff is to be entered thereon with interest from the date of the writ. See *J. J. Struzziery Co. Inc.* v. *A. V. Taurasi Co. Inc. ante,* 113.

*So ordered.*