TOWN OF FRAMINGHAM *vs.* DEPARTMENT OF PUBLIC UTILITIES & another.

Suffolk. April 7, 1966. — June 13, 1966.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Public Utilities. Zoning,* Public utilities. *Railroad.*

Upon an appeal by a town under G. L. c. 25, § 5, from a decision by the Department of Public Utilities granting a petition by a railroad under G. L. c. 40A, § 10, for exemption from the operation of the town's zoning by-law of land in a general residence district which the railroad proposed to use for parking automobiles brought there by rail prior to their distribution to dealers and which was adjacent to industrially zoned land already so used by the railroad, the record showed substantial evidence in support of findings by the department that the proposed use of the additional land would "not materially change the general character" of the surrounding area nor have "significant effect" thereon nor add appreciably to the disturbances and traffic problem which already existed, would provide profits to the railroad and so help it to continue "some of its less remunerative but nevertheless necessary services," would result in a "savings in costs" of transportation of new automobiles, and was "reasonably necessary for the convenience and welfare of the public"; and such findings showed adequate reasons for the department's decision and required its affirmance.

PETITION filed in the Supreme Judicial Court for the county of Suffolk on February 17, 1965.

The case was reserved and reported by *Whittemore, J.,* without decision.

*Edward M. Dangel* (*Leo E. Sherry, Joseph H. Lewis,* Town Counsel, & *Margery C. Leonard* with him) for the Town of Framingham.

*Richard J. Ferriter* for The New York Central Railroad Company (*Peter Roth,* Assistant Attorney General, for the Department of Public Utilities, with him).

SPIEGEL, J. This is an appeal under G. L. c. 25, § 5, from a decision by the Department of Public Utilities under G. L. c. 40A, § 10,[1] exempting land owned by the New York Central Railroad from the operation of the town of Framingham zoning by-law. The case was reserved and reported without decision by a single justice "on the petition for appeal, the answers, and the record, including the transcript and exhibits."

The railroad petitioned to exempt certain of its land from residential zoning in order to use it as a "terminal freight yard" where automobiles would be parked after being unloaded from railroad cars and prior to being loaded on carrier trucks for delivery to dealers in the area. The department denied the railroad's petition. On appeal, this court vacated the department's decision for failure to make adequate findings of fact and remanded the case for further proceedings. *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586. On remand, the department held a further hearing.

There was evidence at the hearings that the locus is adjacent to industrially zoned land of the railroad used as a "terminal freight yard." Residents in the neighborhood testified regarding the noise and glare of lights from the use of the present facility. Witnesses for the town testi-

---

[1] Section 10 reads, "[L]and used or to be used by a public service corporation may be exempted from the operation of a zoning . . . by-law, if, upon petition of the corporation, the department of public utilities shall, after public notice and hearing, decide that the present or proposed situation of the . . . land . . . is reasonably necessary for the convenience or welfare of the public."

fied that there is a serious traffic problem in Framingham, and that when long freight trains use the railroad crossings, "the traffic is backed up sometimes a mile." There was also testimony that the carrier trucks caused "an additional traffic tie-up." The proposed new facility would double the capacity of the railroad for handling automobiles.

The carrier trucks enter and leave the present facilities from Hollis Street; and although approximately 11,000 automobiles a day travel on Hollis Street, an average of less than sixty carrier trucks a day enter the street from the facility. The locus is not suitable for residential use, and the neighborhood in the residential zone has several nonconforming uses "such as two gasoline stations, a tavern or something of that classification, a tavern or bar-room, a laundry." The shipment of automobiles on railroad cars results in savings of $20 to $60 per automobile on the cost of transportation from the manufacturer, and reductions in this cost lead to lower automobile prices. This method also enables more rapid delivery of the automobiles to the customer. Passenger service could not continue to be maintained without the benefits derived by the railroad from profitable freight service. "There is not enough room in the land" presently being used to handle the increasing volume of the railroad's business. The selection of any site other than the locus for expansion "would raise the cost to the railroad and to the eventual purchaser of the automobile."

The town contends that the department's "decision was not accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision." The town also asserts that "the ultimate finding that the use of the locus for a marshaling yard is reasonably necessary for the convenience and welfare of the public was not supported by subsidiary findings nor substantial evidence," and, thus, the decision of the department "is arbitrary, capricious and an abuse of discretion."

In *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 593, fn. 4, we said that the relevant issues

"include (a) the extent of the usefulness of the proposed facility to shippers, manufacturers, motor vehicle distributors, and consumers; (b) the suitability of the locus for the proposed facility and for other uses . . .; (c) the probable effect of the facility upon the gross and net revenues of the railroad; upon the railroad's ability to continue to perform its intrastate and interstate public functions . . .; (d) the effect of the facility upon highway congestion . . .; (e) the possibility that injury to abutting owners can be minimized by proper screening of the facility by trees and otherwise; and (f) the relative advantages and disadvantages of the proposal from the standpoint of the public welfare and convenience."

The department found (a) that there was a "savings in costs" of transportation of new automobiles; (b) that "[t]he use of the locus . . . will not materially change the general character of the area"; (c) that the facility provides profits to the railroad which enable it to continue "some of its less remunerative but nevertheless necessary services"; (d) that "the added traffic generated by the present or proposed use of the facility would not materially add to . . . [the traffic] problem"; (e) that the use of the locus would not have "significant effect upon the surrounding area, nor will it add appreciably to the disturbances which may already exist"; and (f) that "the use of the locus for a marshaling yard is reasonably necessary for the convenience and welfare of the public." The record shows that these findings are supported by substantial evidence. We are of opinion that they show adequate reasons for the department's decision and included a "determination of each issue of fact or law necessary to the decision."

The town also maintains that the department "erred in failing to take into account the vital issue of zoning, and the effect . . . [the] exemption might have on the landowners in the area, the . . . [town] and the . . . Commonwealth." The town also claims that the department "erred in ignoring the *rights* of the landowners in the area, including their right to rely upon the integrity of the Zoning By-Law." We do not agree.

The findings show that the department did consider the general character of the neighborhood. It also considered the effect of the proposed facility on the surrounding area and its effect on traffic in the town. It seems to us that the department did take into account the "vital issue of zoning." In any event the zoning by-law was subject to an exemption under the statute.

A final decree is to be entered affirming the decision of the department.

*So ordered.*