JOHN E. P. PLANTE *vs.* CITY OF MEDFORD & another.

Middlesex.    February 9, 1967. — March 7, 1967.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Municipal Corporations,* Employees, By-laws and ordinances.

Under a city ordinance reciting in its preamble that "like work should be compensated . . . by like pay" and providing that an employee "acting" in a position who "remains" in that capacity for more than six months must be paid "the compensation attached to the position," a deputy chief of the fire department who had been acting chief performing the duties of the chief for nearly three years when he was retired, but upon his retirement had so served less than two months after the effective date of the ordinance, was entitled to a retirement allowance based on the annual compensation of the chief, not the annual compensation of a deputy.

BILL IN EQUITY filed in the Superior Court on April 26, 1963.

The suit was heard by *Kalus*, J.

*Robert D. O'Leary* for the plaintiff.

*Robert J. Blumsack*, Assistant City Solicitor, for the City of Medford.

CUTTER, J.  Plante, formerly acting chief of the Medford fire department, seeks declaratory relief against the city and the city manager to determine whether, in the circumstances mentioned below, he is entitled to a retirement allowance of $5,135, which amounts to sixty-five per cent of the chief's annual compensation at the time of Plante's retirement.  The trial judge made findings (adopted as a report of material facts) and concluded that Plante's retirement allowance should not be based upon sixty-five per cent of the chief's salary.  From a final decree making a declaration to this effect, Plante appeals.  The evidence is reported.

In 1937, Plante (whose service began in 1911) became deputy chief of the fire department.  On April 30, 1954, he was designated ''[a]cting [c]hief . . . until further notice.''  From that date until his retirement on February 16, 1957, upon reaching the mandatory retirement age of sixty-five, he continuously performed the duties of chief.

The city manager, shortly after April 30, 1954, recommended that Plante be given compensation equal to that of the chief but no such vote was ever adopted.  Upon his retirement ''as senior deputy'' he was paid, and is receiving, a pension of $4,485, based on sixty-five per cent of the pay of the senior deputy chief.[1]

By Ordinance No. 157 (Medford Ordinances, c. 2, §§ 69, 70), effective January 1, 1957, the city adopted a compensation plan.  Section 69.05 of this plan provided, ''In the

---

[1] The Medford Ordinances (see c. 8, §§ 4, 5) provide (§ 4) that ''the chief engineer [fire chief] shall be held responsible'' for running the fire department; and that (§ 5) ''[i]n case of the absence or disability of the chief engineer, the senior deputy chief engineer, during such absence or disability, shall have and exercise all the power and authority of the chief engineer, and shall perform the duties of his office.''

event that an employee is given the title 'Acting,' the compensation for the position *may or may not* be paid to the acting employee in the discretion of the Employing Authority. If an employee *remains* in the capacity of 'Acting' for more than six months, he shall be paid the compensation attached to the position but payment of said compensation shall not affect the employee's status as 'Acting' " (emphasis supplied). Prior to the adoption of the ordinance there was no provision that an employee in an "acting" status should receive the compensation of the chief of the fire department.

The trial judge ruled that Plante was "not entitled to a retirement pay equal to 65 per cent of . . . the salary of the fire chief," because he had not served in an acting capacity, as defined in § 69.05 for more than six months after the adoption of Ordinance No. 157, for he "had been retired . . . only 47 days after the pay plan was adopted." The question before us is whether this ruling is correct in view of the fact that for thirty-two months prior to January 1, 1957, Plante had been serving as acting chief.

Section 69.05 can be interpreted as applying from January 1, 1957, to persons who then (or at any time thereafter) had been in an acting status for more than six months. Such an interpretation would make the effect of the ordinance wholly prospective, for it would mean that the city would be paying a higher rate only for future work. Cf. *James* v. *Mayor of New Bedford,* 319 Mass. 74, 76 (ordinance raising salaries "from January 11, 1945," was "not retroactive to include the first eleven days of the year," for the city could not give employees "a gratuity on account of work already performed") ; *Eisenstadt* v. *County of Suffolk,* 331 Mass. 570, 572–574.

The trial judge's interpretation of the ordinance involves, in effect, the insertion in § 69.05 of the words "on and after the effective date of this ordinance" immediately after the words "six months." The city council itself did not see fit to incorporate these words in § 69.05.

The preamble of Ordinance No. 157 states that it was intended "to provide a modern and comprehensive system of

personnel administration and compensation for . . . Medford so that fairness and equity to the employees and the taxpayers . . . may be achieved,'' with the consequence that ''like work should be compensated . . . by like pay'' and ''public employment in the service of . . . Medford . . . made attractive as a career.''[2] The city's contention, that Plante is not entitled to the benefits of § 69.05, necessarily involves some failure to carry out the equitable purpose thus declared. The ordinance established as the city's public policy that, after six months, an ''acting'' employee should receive the pay of the post in which he was acting. We think that (in the light of the stated purpose of the ordinance) it would take very clear legislative language to justify denying that pay to an ''acting'' employee, about to retire, merely because he had performed some or all of the work qualifying him for such pay before, rather than after, the effective date of the ordinance.

We recognize that the word ''remains'' in § 69.05 may suggest that the section is designed to refer only to future service in an ''acting'' status. Nevertheless, undue weight should not be given to this single word. Although the ordinance could have been much more precisely expressed (cf. *Crowley* v. *Boston,* 342 Mass. 344, 348–349; *Albernaz* v. *Fall River,* 346 Mass. 336, 341, fn. 2), it seems to us more consonant with the comprehensive character and equitable purpose of the ordinance to treat the clause, ''remains in the capacity of 'Acting' for more than six months,'' as describing (a) persons who on the effective date of the ordinance have satisfied, in whole or in part, the requirements of the clause, as well as (b) persons who thereafter satisfy it by six months of service in an ''acting'' capacity entirely after the effective date.

The result is (1) that the first sentence of § 69.05 leaves it to the discretion of the employing authority for a period

---

[2] See G. L. c. 41, § 108A (as amended through St. 1948, c. 351, see later amendment St. 1960, c. 87), providing for the adoption of city and town employees' classification and salary plans; *Hackett* v. *Worcester,* 346 Mass. 634, 637–638. See also *Doherty* v. *Woburn,* 345 Mass. 523.

of six months to determine whether to pay, or not to pay, an "acting" employee the full compensation of the office the duties of which he is performing, and (2) that, after the first six months of "acting service" (whether these took place before or after the effective date of the ordinance), the employee (while still "acting" after the effective date) must receive the full salary of the position.[3]

The final decree is reversed. A new final decree making a declaration of rights consistent with this opinion is to be entered. Plante is to have costs of this appeal.

*So ordered.*

---

[3] For decisions in other jurisdictions consistent with our interpretation, see *People ex rel. Albright* v. *Board of Trustees of the Firemen's Pension Fund of Denver,* 103 Colo. 1, 12–14; *Hill* v. *Billings,* 134 Mont. 282, 286–287, and cases cited; *San Antonio* v. *Baird,* 209 S. W. 2d 224, 225 (Tex. Civ. App.). See also *Cox* v. *Hart,* 260 U. S. 427, 435; *Pan American World Airways, Inc.* v. *United States,* 371 U. S. 296, 303; *Bates* v. *McLeod,* 11 Wash. 2d 648, 654.