CITY MANAGER OF MEDFORD *vs.* STATE LABOR RELATIONS
COMMISSION & others.[1]

Suffolk.   December 8, 1967. — January 8, 1968.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Labor.   Municipal Corporations,* Employees, Collective bargaining.
*Equity Jurisdiction,* Premature proceeding, Review of decision of
State Labor Relations Commission.

In the absence of extraordinary circumstances or of questions relating
to the jurisdiction of the State Labor Relations Commission, judicial
review of a certification decision by it under G. L. c. 149, §§ 178G–178N,
should be postponed until, upon complaint, the commission has issued
or denied an order to the municipal employer or municipal employees
to desist from a practice prohibited by the statute. [523]
A petition on behalf of a municipal employer for judicial review of a de-
cision of the State Labor Relations Commission was brought pre-
maturely and should have been dismissed where it appeared that,
following the commission's investigation of a petition to it under
G. L. c. 149, § 178H, by a union for certification as the collective
bargaining agent of certain municipal employees, the commission
merely decided that a question of representation had arisen, that the
holders of specified positions comprised the appropriate bargaining
unit, and that an election should be held by secret ballot to determine
whether a majority of such employees had selected the union as their
collective bargaining agent. [524]
The provision of G. L. c. 149, § 178H (4), inserted by St. 1965, c. 763, § 2,
that "uniformed employees of the fire department [of a municipality]
shall be in a separate unit" for purposes of collective bargaining re-
quires exclusion of a nonuniformed employee of the department from
the unit, but does not require that all uniformed firefighters be in the
same unit. [525]
Warranted subsidiary findings by the State Labor Relations Commission,
·upon a petition to it by a union under G. L. c. 149, § 178H, for certi-
. fication as the collective bargaining agent for a city's firefighters,
permitted a conclusion by the commission that the appropriate bar-
gaining unit consisted "of all [uniformed] firefighters employed by
the . . . [city] including lieutenants, captains, district chiefs, [and]
deputy chiefs, but excluding the chief." [526–527]

PETITION filed in the Superior Court on June 28, 1966.

The case was heard by *Hale,* J.

---

[1] The president, secretary, and a director of International Association of
Firefighters, Local 1032, an unincorporated labor association, were permitted
to intervene as parties defendant.

*Mark E. Gallagher, Jr.,* City Solicitor (*Robert J. Blumsack,* Assistant City Solicitor, with him), for the petitioner.

*Joseph A. Furnari* for the respondent State Labor Relations Commission.

*David Berman* (*John F. Zamparelli* with him) for the interveners.

CUTTER, J.  On April 4, 1966, the president of International Association of Firefighters, Local 1032 (the union, see fn. 1), filed with the commission a petition for certification of the union as collective bargaining agent for Medford's firefighters.  See G. L. c. 149, §§ 178G–178N (inserted by St. 1965, c. 763, § 2; see amendment of § 178G by St. 1966, c. 156),[2] regulating collective bargaining by municipal em-

[2] Pertinent provisions (emphasis supplied) include the following: (a) *Section 178G* defines (1) "Municipal employer" as including "any . . . city . . . and any person designated by the municipal employer to act in its interest in dealing with municipal employees"; (2) "Employee" as "any employee of a municipal employer, whether or not in the classified service of the municipal employer, *except* elected officials, board and commission members, and *the executive officers* of any municipal employer"; and (3) "Employee organization" as "any lawful . . . organization . . . having as a primary purpose the improvement of wages, hours and other conditions of employment." (b) *Section 178H (1)* grants to municipal employees "the right to self-organization" and "to bargain collectively through representatives of their own choosing." (c) *Section 178H* further reads, in part, "(2) Whenever . . . a petition is filed . . . by an . . . employee organization alleging that a substantial number of employees wish to be represented for collective bargaining by an employee organization . . . [the] commission shall investigate . . . and, if it has reasonable cause to believe that a question of representation exists, shall provide for an appropriate hearing . . . .  (3) If . . . the commission finds that there is a controversy concerning the representation of employees, it shall direct an election by secret ballot or shall use any other suitable method to determine whether and by which employee organization the employees desire to be represented and shall certify the results thereof. . . .  An employee organization which receives a majority of votes cast in an election shall be designated by the commission as exclusive representative of the employees in the unit.  In any election where none of the choices on the ballot receives a majority, a run off [of the top two organizations] shall be conducted . . . .  (4) The commission shall decide in each case whether the appropriate unit . . . shall be the municipal employer unit or any other unit thereof; provided, *uniformed employees of the fire department shall be in a separate unit.*"  This subsection is subject also to a provision concerning "professional employees" not here pertinent.  See a new subsection (5) inserted by St. 1967, c. 746. (d) *Section 178L* defines certain unfair practices including "(4) refusing to bargain collectively in good faith with an employee organization which has been . . . designated as the exclusive representative of employees in an appropriate unit; and (5) refusing to discuss grievances with the representatives of an employee organization . . . designated as the exclusive representative in an appropriate unit."  Section 178L also provides for the hearing and decision by the commission of complaints "that a practice prohibited by . . . [the] section has been committed" and for an order by the commission to the party found by it to be "committing the prohibited practice . . . to cease and desist" therefrom.

ployees. The commission on June 9, 1966, filed a decision. After meager findings of subsidiary facts, it stated (1) that a question of representation had arisen; (2) that the appropriate unit consisted "of all fire fighters employed by the . . . [city] including lieutenants, captains, district chiefs, [and] deputy chiefs, but excluding the [c]hief . . . and . . . all other [city] employees," and (3) that an election should be held on July 7, 1966, to determine whether a majority of the employees had selected the union as collective bargaining agent.

The city manager, on June 28, 1966, filed this petition for judicial review. He contends that the commission's decision improperly "lumps together all uniformed employees of the Medford [f]ire [d]epartment as an appropriate [bargaining] unit with the . . . exception of the [c]hief . . . and orders an unnecessary election." A Superior Court judge overruled a plea to the jurisdiction filed by the interveners. This plea was based primarily on the ground that the commission's decision was not a final order. By final decree, the commission's decision was affirmed. The city manager appealed.

1. We first consider whether this petition is premature.[3] The commission ordered an election by secret ballot "as part of the investigation authorized by" it.

The statutes permitting collective bargaining by municipal employees (see fn. 2) contain no express provision for

---

[3] The briefs do not adequately discuss, and we do not decide, whether the city manager has standing (see Jaffe, Judicial Control of Administrative Action, p. 537, et seq.; Davis, Administrative Law Treatise, § 22.15), as a person within the definition of "municipal employer" in c. 149, § 178G (see fn. 1), to bring this petition in his own name. We assume that, as chief administrative officer of the city (see G. L. c. 43, § 103, as amended through St. 1950, c. 353, and §§ 104–105), he may be permitted to amend his petition so that it will be brought in the name of the city (G. L. c. 40, § 2; see *Natick* v. *Massachusetts Dept. of Pub. Welfare,* 341 Mass. 618, 619; *Building Inspector of Wayland* v. *Ellen M. Gifford Sheltering Home Corp.* 344 Mass. 281, 286–287). He has an obvious interest in administrative matters (see *City Manager of Medford* v. *Civil Serv. Commn.* 329 Mass. 323, 330) affecting city employees subject to his general supervision. The city, by counsel, participated in the proceedings before the commission. See *Wilmington* v. *Department of Pub. Util.* 340 Mass. 432, 437–439. See also *State Bd. of Retirement* v. *Contributory Retirement Appeal Bd.* 342 Mass. 58, 59–60; *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 217–219. Cf. *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 542–544.

judicial review. General Laws c. 30A, § 14 (as amended through St. 1957, c. 193, § 1), however, provides for judicial review of "a final decision of any agency in an adjudicatory proceeding." The commission and the interveners contend that there has been no "final decision" by the commission.

Precedents under G. L. c. 150A, § 6 (f), as amended through St. 1954, c. 681, § 11, are not directly controlling. Nevertheless, there are numerous similarities between c. 150A, the State Labor Relations Law (see c. 150A, § 12) which is applicable to private industry, and the 1965 statute (see fn. 2) concerning municipal employment. Accordingly, precedents under c. 150A are likely to furnish helpful guidance if differences between the two statutes and between public and private employment are appropriately taken into account.

In *Jordan Marsh Co.* v. *Labor Relations Commn.* 312 Mass. 597, 602, this court held that "in ordinary cases" judicial review of certification issues within the commission's jurisdiction could take place only after there had been a commission decision based upon an unfair labor practice.[4] At that stage, "the whole proceeding, including any errors in the certifying of the representatives . . . [becomes] open to court review." The court in the *Jordan Marsh Co.* case (p. 602) left open the possibility that cases might exist "where the effect of a mere certification might be so immediately and completely disastrous to the legally protected interests of the employer that the Legislature must be presumed to have intended" to permit other avenues of review.

In cases reviewing action of the National Labor Relations Board, similar principles have been applied. See *American Fedn. of Labor* v. *National Labor Relations Bd.* 308 U. S.

---

[4] Such postponement of court review, however, is not necessary in cases where the commission acts outside its jurisdiction. In such instances judicial proceedings have been permitted in advance of any final order on an unfair labor practice. See e.g. *Saint Luke's Hosp.* v. *Labor Relations Commn.* 320 Mass. 467, 469–474; *Wheaton College* v. *Labor Relations Commn.* 352 Mass. 731, 735–738.

401, 412. An order for an election has not been regarded as a final order. *Inland Empire Dist. Council* v. *Millis,* 325 U. S. 697, 707, reh. den. 326 U. S. 803. See *Boire* v. *Greyhound Corp.* 376 U. S. 473, 476–481. The Supreme Court of Connecticut has recently reached a similar conclusion under its statute (Conn. Gen. Sts. Ann. [1965] §§ 7–467 to 7–477; see Pub. Act No. 159, 1965) regulating collective bargaining by municipal employees.[5] See *Windsor* v. *Windsor Police Dept. Employees Assn. Inc.* 154 Conn. 530, 536–539.

We conclude that the principles stated in the *Jordan Marsh Co.* case, 312 Mass. 597, 602 (at least in the absence of extraordinary circumstances making certification questions of vital significance, or of questions relating to the commission's jurisdiction), should be applied to postpone judicial review of certification questions until, upon complaint, the commission has issued or denied an order (see c. 149, § 178L) to the municipal employer or to employees to desist from a practice prohibited by the statute. When such an order is issued, the propriety of the commission's decision on certification issues will be open for appropriate judicial scrutiny.

The city manager contends that the commission had no authority to order an election and that, in any event, an election is unnecessary (see White, Rights and Responsibilities in Municipal Collective Bargaining, 22 Arbit. J. 31, 32), because the city in fact recognizes the union as the firefighters' exclusive bargaining agent. Certainly, there appears to be no real objection by the city to recognizing the union as representing all the firefighters except the

---

[5] The Connecticut statute was adopted a few months earlier than the Massachusetts statute, which in many respects appears to follow the Connecticut language. The Connecticut court, however, rested its decision (p. 535) in part upon § 7–471 (4) (D), a provision not included in the comparable Massachusetts section. See G. L. c. 149, § 178L. On general principles, however, we reach essentially the same result. Precedents under other somewhat different State statutes afford little guidance. See Mich. Comp. L. Ann. §§ 423.201 to 423.216; Wis. St. 1965 sub-c. IV, § 111.70 (see also *Milwaukee County Dist. Council 48* v. *Wisconsin Employment Relations Bd.* 23 Wis. 2d 303, 306–307; note, 1965 Wis. L. Rev. 652); 7 Wyo. St. (1965 supp.) c. 14, §§ 27–265 to 27–273; note, 8 B. C. Ind. and Com. L. Rev. 273. Cf. annotation, 31 A. L. R. 2d 1142.

deputy chiefs and officers (for convenience here called the officer group). The only real dispute appears to be whether the officer group should be included in the bargaining unit. Nevertheless, we cannot say that under c. 149, § 178H (3), the commission was not justified in ordering an election as part of its investigation, to obtain assurance, through an uncoerced, free, secret ballot, that the firefighters really wished to be represented by the union. See, however, the provisions for waiving an election by stipulation in St. 1967, c. 746, amending § 178H.

The petition does not set forth any facts showing (a) that the commission has exceeded its jurisdiction, (b) that there is any extraordinary occasion for varying the usual procedure for review, or (c) that special injury to the public interest or inconvenience to the city or its firefighters will occur if the commission's investigation takes the usual course. Accordingly, it was premature for the Superior Court to exercise jurisdiction to review the commission's action. The petition should have been dismissed.

2. Although the case could be disposed of on what has been said, the parties urge us to express views (see *Wellesley College v. Attorney Gen.* 313 Mass. 722, 731) upon the principal issue in dispute. Some general discussion is appropriate.[6]

The 1965 statute says little concerning what is an "appropriate unit" for collective bargaining. Section 178H (4), quoted, *supra,* fn. 2, leaves it to the commission to "decide in each case," whether it "shall be the municipal employer unit or any other unit," subject to the explicit exclusion of "executive officers of any municipal employer" from the definition of "employee" in § 178G and subject also to provisions in § 178H (4), viz. (1) that "uniformed employees of the fire department shall be in a separate unit," and

---

[6] The extent of public interest in the 1965 statute and related matters is shown by these articles among others. See White, Rights and Responsibilities in Municipal Collective Bargaining, 22 Arbit. J. 31; Moran, Collective Bargaining in the Public Service — Massachusetts Style, 52 Mass. L. Q. 153; Grady, Massachusetts Public Service and Collective Bargaining, 10 Boston Bar J. (No. 3) 5; Teele, Public Disputes and the Public Interest, 21 Arbit. J. 24. See also Clary, Pitfalls of Collective Bargaining in Public Employment, 18 Labor L. J. 406.

(2) that "professional employees"(see § 178G) shall not be placed in a unit containing nonprofessional employees without the consent of a majority of the professional employees. The structure and purpose of the statute, however, indicate matters which the commission should take into account. Cf. *Newton* v. *Department of Pub. Util.* 339 Mass. 535, 546–547; *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 593.

Because the statute deals with public employees, public interest considerations are of greater importance in determining appropriate units than in cases dealing with private employment. The statute (§ 178M) makes unlawful strikes, slowdowns, and other action which may interrupt essential public services, and places much reliance on "fact finding" (§ 178J) as a method of "peaceful resolution of disputes without disruption of public services." See Krinsky, Public Employment Fact-Finding in Fourteen States, 17 Labor L. J. 532; note, 8 B. C. Ind. & Com. L. Rev. 273, 283–288. The major public interest objectives of the statute are to be given weight by the commission which, of course, may also take into account considerations such as those mentioned in the second *Jordan Marsh Co.* case, 316 Mass. 748, 750–751.

We think that the commission correctly construed the provision in § 178H (4), that "uniformed employees of the fire department shall be in a separate unit" as requiring it to exclude one nonuniformed employee from the unit. This provision, however, does not indicate to us that all uniformed firefighters must be in the same unit. We think that the section requires no more than that uniformed employees be kept in one or more units separate from the department's nonuniformed employees, thus enabling the commission to deal flexibly in the public interest with the great variety of situations which may confront it. These may require determining whether in any particular community or department it is wise to include supervisory employees in a unit with the employees whom they supervise. See 1 N. L. R. B. Legis. Hist. of the Labor Manage-

ment Relations Act, 1947, pp. 302, 304–308, 409–411; cf. pp. 362–363.[7]

The commission, we think, was plainly correct in excluding the chief as an "executive officer." The other members of the officer group present a more doubtful question. As to them the commission's decision contains little more than ultimate conclusions and does not make the full findings of subsidiary facts and statements of its reasons appropriate in view of G. L. c. 30A, § 11 (8). See e.g. *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 592–594. See also *Framingham* v. *Department of Pub. Util.* 351 Mass. 127, 129–131. Cf. *Sudbury* v. *Department of Pub. Util.* 351 Mass. 214, 230. We are left largely to infer what subsidiary findings were in fact made from the transcript of the commission hearing.

The commission had before it the job descriptions of the various grades of firefighters. There was also evidence, among other things, that the fire chief had disciplinary and assignment authority; that deputy chiefs acted for the chief in his absence (see *Plante* v. *Medford,* 352 Mass. 190, 191); that officers came up through the ranks; that they do much the same work as the ordinary firefighters and work with them; that they live and eat together, or in the same building, to a considerable extent; that the officers exercise some supervisory and instruction authority; that there is an orderly chain of command; and that some collective bargaining on firefighters' working conditions had been done in the past by a committee representing all grades in the Medford department, including the officer group. There was no evidence that members of the officer group

---

[7] Because the 1965 statute contains no provision excluding from the definition of employee "any individual employed as a supervisor," the commission is not directly bound by Federal precedents in this respect. See *Martineau* v. *Director of Div. of Employment Sec.* 329 Mass. 44, 47–49. Cf. National Labor Relations Act, 29 U. S. C. § 152 (3) (1964); *Jas. H. Matthews & Co.* v. *National Labor Relations Bd.* 354 F. 2d 432, 434–435 (8th Cir.), cert. den. 384 U. S. 1002. Obviously, practices under the 1965 statute will develop on a case by case basis. See White, op. cit. 22 Arbit. J. 31, 32, where it is suggested that "[c]ertifications . . . ought to be frankly experimental and subject to review based on experience." See also *Massachusetts Bay Transp. Authy.* v. *Boston Safe Deposit & Trust Co.* 348 Mass. 538, 544–545.

objected to being included in the bargaining unit or that harmful results to departmental discipline or the city's general interests would be caused by their inclusion.

Although, as already indicated, the commission's findings should have been more complete, we assume that appropriate, permissible findings are implied in the commission's conclusions. For present purposes, it is sufficient for us to indicate that substantial evidence justified subsidiary findings which in turn would have permitted the commission's conclusions.

3. Because the petition was brought prematurely, the case is remanded to the Superior Court, where a new final decree is to be entered dismissing the petition.

*So ordered.*