TOWN OF WESTBOROUGH *vs.* DEPARTMENT OF PUBLIC UTILITIES & others.[1]

Suffolk.    January 6, 1971. — February 19, 1971.

Present: CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Public Utilities. Zoning,* Public Utilities. *Railroad.*

Upon an appeal by a town under G. L. c. 25, § 5, as amended, from a decision by the Department of Public Utilities granting a petition by a railroad under c. 40A, § 10, for exemption from the operation of the town's zoning by-law of land in a residential zone, which the railroad intended to use as a freight yard, unloading facility, and distribution center for automobiles, the decision must be affirmed where it was amply warranted by a record containing substantial evidence in support of findings by the department setting forth many advantages to the public and the railroad which would result from a grant of the exemption, and negativing any substantial disadvantages therefrom, and concluding that the exemption sought was "reasonably necessary for the convenience and welfare of the public."

PETITION filed in the Supreme Judicial Court for the county of Suffolk on June 10, 1970.

The case was reserved and reported by KIRK, J., without decision.

*Robert J. Gallagher,* Town Counsel, for the Town of Westborough.

*Joseph L. Tauro (Richard J. Ferriter* with him) for the Penn Central Transportation Company.

*Robert H. Quinn,* Attorney General, & *Charles K. Mone,* Assistant Attorney General, for the Department of Public Utilities, submitted a brief.

---

[1] The Trustees of Penn Central Transportation Company, in reorganization, have succeeded the original applicant for exemption.

CUTTER, J.    The town appeals (G. L. c. 25, § 5, as amended) from a decision of the department exempting (see G. L. c. 40A, § 10) about 46.8 acres of land (the locus), from the provisions of the town's zoning by-law, at the request of Penn Central Transportation Company (Penn Central).    The locus adjoins Penn Central's northerly property line for about 4,157 feet.    Penn Central intends to install on the locus 35,900 feet of track.    The whole locus is proposed for use as a freight yard, unloading facility, and distribution center for automobiles.    A single justice reserved and reported the case, without decision, for our determination on the pleadings and the record before the department.

The department held hearings upon Penn Central's request and received evidence, all of which is before us.    On February 19, 1970, it made an interim order (reopening the hearings).    The order contained some recitations of evidence and a few findings.    A second order of April 29, 1970, recited further evidence, but made few findings beyond the general conclusion that "the exemption sought is reasonably necessary for the convenience and welfare of the public" and some general findings set out in the margin.[2]

1. These findings were not adequate to enable us to determine (a) whether the department's order and conclusions

---

[2] The findings were: (1) "Penn Central has made efforts since the original hearings in this matter to upgrade the quality of passenger service in the Commonwealth, to compromise on service reductions, and to reduce the Commonwealth's share (albeit slightly) of the tri-state long-haul passenger service subsidy."    (2) "[I]mproved passenger service will be highly unlikely, if not actually impossible, unless the financial health of the entire railroad operation can be preserved."    (3) The locus, "at the conjunction of a number of transportation routes, is an appropriate place for the contemplated facility.    Given the available highway system, any additional traffic is not likely to cause serious problems.    While we cannot say that the neighborhood will be unaffected by the proposed use, we find that the negative effect which may be experienced is minor compared to the benefits which can flow to public transportation in the Commonwealth as a whole. . . . [A] similar facility has been operated since December, 1969, by the Company on land adjacent to the . . . [locus] without serious disruption to the community in general or to abutters in particular."    Because of recommendations of the Department of Natural Resources, the exemption order was made subject to the condition that any filling by Penn Central of swamp on the locus "shall be offset . . . by providing an equal volume of storage above the water table and below historic flood elevations in the swamp, adjacent to the swamp."    This condition is not now in dispute.

were warranted by appropriate subsidiary findings, and (b) whether such subsidiary findings were supported by substantial evidence. G. L. c. 30A, §§ 11 (8), 14. *Herson's Case,* 341 Mass. 402, 407–408. *Hamilton* v. *Department of Pub. Util.* 346 Mass. 130, 137 (and cases cited). *Wannacomet Water Co.* v. *Department of Pub. Util.* 346 Mass. 453, 470–471. See *Salisbury Water Supply Co.* v. *Department of Pub. Util.* 344 Mass. 716, 717–718; *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.* 355 Mass. 610, 612. The department, as in *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, -593,[3] in effect improperly left us, without the guidance of proper findings (as opposed to mere recitations of evidence or arguments), to determine from a voluminous record (471 pages of transcript and fifteen exhibits) whether its conclusions could be sustained on the evidence. Accordingly, by order of January 12, 1971, we requested the department to make supplemental subsidiary findings on specified issues. This the department has now done (February 8, 1971), and has included helpful page references to evidence on which it relies.

2. General Laws c. 40A, § 10,[4] has been considered in several decisions. *New York Cent. R.R.* v. *Department of Pub. Util.* 347 Mass. 586, 587, 591. *Framingham* v. *Department of Pub. Util.* 351 Mass. 127, 129–131. *Framingham* v. *Department of Pub. Util.* 355 Mass. 138, 145–146. Upon adequate findings concerning any possible effect upon pertinent aspects of the public interest, supported by substantial evidence, the department may exempt particular property from the operation of local zoning by-laws.

---

[3] There, in a case very much like that before us, we said, "The department's subsidiary findings should have dealt with each relevant issue. As it is, we have no way of knowing what facts the department found to exist and whether, in reaching its general conclusion, the department applied correct principles of law to the facts found by it." We returned that case to the department for more complete subsidiary findings.

[4] Section 10 (inserted by St. 1954, c. 368, § 2) continues substantially similar earlier statutory provisions. It reads: ". . . [L]and used or to be used by a public service corporation may be exempted from the operation of a zoning . . . by-law if, upon petition of the corporation, the department of public utilities shall, after public notice and hearing, decide that the . . . proposed situation of the . . . land . . . is reasonably necessary for the convenience or welfare of the public."

3. The department's findings, now fully supplemented, are based upon evidence received both before and after the department's order of February 19, 1970. The principal findings are summarized in the succeeding two paragraphs.

(a) Penn Central "will realize operational savings . . . of approximately $725,000 [presumably each year] from a reduction in equipment and transportation costs" possible because of the new distribution center. Delays now are encountered at points where automobiles are presently unloaded. These and other difficulties will be avoided or reduced by the more rapid distribution at the new facility. (b) If the exemption is not granted, a connector road, vital for industrial development of the area, will not be built. (c) No "significant adverse effects on the zoning interests of . . . Westboro will be produced" if exemption is granted. The locus "is adjacent to industrially zoned land . . . on which construction . . . is now going on," and to Penn Central's main rail line. One adjoining property contains an auto unloading facility. Property south of the railroad is zoned for industrial use. The nearest resident is 1,700 feet distant and the nearest residential development is 4,000 feet away. From the latter the proposed facility cannot be seen. Part of the locus is swamp land which cannot be economically developed for residential use. The development will have "no adverse effects upon the value of the occupied property in the neighborhood." (d) There have been no "specific adverse or beneficial effects upon . . . Westboro as a result of" a similar distribution operation to the east of the locus. This other operation has not given rise to known complaints because of excessive noise, lighting, or traffic. (e) The locus is an appropriate place for the facility because of its proximity to the railroad, the Massachusetts Turnpike, Route 495, and Route 9. (f) No "public interest is served by" continuing the present residential zoning. "The opposite is true." Improvements to the locus will render productive "land, in part, now fallow." Construction "of the connector road will produce development in the area."

The department also made findings concerning the railroad's interest in the project. If Penn Central "is not permitted to effect the *type* of operational savings here" proposed, "it cannot stay in the railroad business." Loss of "the business which this facility will bring to the railroad," would require shrinkage of its freight service, which "affects the efforts it can make in its passenger services." Loss of the net revenue of $2,050,000 involved in this proceeding will affect the overall financial circumstances of Penn Central. If the project is not constructed, the traffic will probably go to another railroad or move by highway. Construction of the facility will increase area employment, be a benefit to consumers, avoid "clogging . . . main transportation arteries in urban areas," and open for development "a prime industrial location."

Upon these and earlier findings (fn. 2), the department's exemption of the locus under G. L. c. 40A, § 10 (fn. 4), from the Westborough zoning by-law was amply warranted as "reasonably necessary for the [public] convenience." *Framingham* v. *Department of Pub. Util.* 351 Mass. 127, 129–131. Examination of the record shows that the findings were supported by substantial evidence.

4. A final decree is to be entered affirming the decision of the department.

*So ordered.*