CITY OF JOPLIN, Missouri, A Municipal Corporation, Respondent,

v.

MISSOURI STATE BOARD OF MEDIATION,

and

International Association of Firefighters, Local No. 2618, Appellants.

Nos. 11636, 11648 and 11650.

Missouri Court of Appeals,
Southern District,
Division Two.

April 2, 1981.

Motion for Rehearing or Transfer
Denied April 22, 1981.

Application to Transfer Denied
June 8, 1981.

John Ashcroft, Atty. Gen., Brenda Farr Engel and Jan Bond, Asst. Attys. Gen., Jefferson City, for appellant Missouri State Bd. of Mediation.

Charles C. Shafer, Jr., Kansas City, for appellant International Assn. of Firefighters Local No. 2618.

Harry L. Browne and Stanley E. Craven, Spencer, Fane, Britt & Browne, Kansas City, George Baldridge, City Atty., Joplin, for respondent.

HOGAN, Judge.

■ Professional Firefighters Association Local 2618 petitioned the State Board of Mediation to determine the appropriate bargaining unit for employees of the Joplin Fire Department. After a hearing, the board concluded that captains and lieutenants as well as fire drivers and firefighters should be included. The city filed a petition for review in the Circuit Court of Jasper County, alleging that captains and lieutenants were supervisory employees and should be excluded from the bargaining unit. The city also petitioned the court to order a new election. The circuit court reviewed the administrative record without hearing further evidence. It concluded the board had abused its discretion and ordered the captains and lieutenants excluded. The board and the union now appeal contending that the circuit court infringed the board's fact-finding province; the city appeals, arguing that a new election should have been ordered. We review the decision of the board, not the judgment of the trial court. *Wilhite v. Hurd*, 411 S.W.2d 72, 76[1] (Mo. 1967); *Lester E. Cox Med. Ctr. v. L. & I. Rel. Com'n*, 606 S.W.2d 427, 432 (Mo.App. 1980); *Ingram v. Civil Service Commission*, 584 S.W.2d 633, 634 (Mo.App.1979). The sole question before us is whether the board's decision satisfies the criteria enumerated in Rule 100.07(b), V.A.M.R. We hold it does.

■ The City of Joplin operates its fire department in a unitary manner. The city maintains a central or principal fire station and three satellite stations. Each station is manned by three separate units, here referred to as "work shifts." At the central station each shift consists of one captain, four "fire drivers" and three firefighters. At the outlying stations, the unit complement varies. At one satellite station a duty shift is made up of one lieutenant, two drivers and three firefighters; at the other two a shift is made up of a lieutenant, one driver and one firefighter. Nevertheless, all duty shifts work a 24-hour tour and are then off duty for 48 hours. The captain or lieutenant is "in charge" by virtue of his superior rank; nevertheless, it is fairly inferable that the officers come up through the ranks and work closely with the drivers and firefighters. All the members of a particular shift live and eat together, or in the same building, during their tour of duty.

The functions of the Joplin fire department may be divided into three types of activity: housekeeping and maintenance; training, and firefighting. The officer in charge of a shift assigns the housekeeping and maintenance chores, but the record warrants the inference that housekeeping and maintenance duties are largely matters of rote; at the outlying stations the officers themselves sometimes participate in those chores. There is evidence indicating that when the senior officer is not present, his ranking subordinate assigns the housekeeping duties. The board could have inferred that no independent supervisory judgment is exercised in assigning housekeeping and maintenance duties.

There was evidence that daily training sessions are mandatory. According to the Assistant Chief, the department expects "a two-hour period minimum daily." Routine daily training includes "[f]ireplug lays, ladder practice, first aid, [all] the normal activities of the firefighters." There is also evidence indicating this routine is not uniformly followed. The Assistant Chief testified that the department uses a series of books called the "Oklahoma Red Book" for training purposes and it could be inferred that the department's techniques of fire control come from these books. There are standing

orders concerning particular types of fires. The board could therefore have concluded that the conduct of training sessions does not involve the exercise of any independent judgment; rather, it might well have inferred that in supervising the training sessions, the officer in charge merely transmits orders and procedures established by his superiors. The variance in training procedure might be interpreted as an exercise of independent supervisory judgment, but it could as easily be construed as a failure to follow established procedures.

The city's fire department recognizes several types of fires. If there is a "large conflagration, a fire death or an area of large hazard" the Chief or Assistant Chief must be called. Response is "discretionary," but the Assistant Chief could recall no instance in which he or the Chief had not responded. Usually, the ranking officer present takes charge of the firefighting activity. There are minor fires, e. g., grass fires, trash fires and "wash down" fires to which no officer responds. These are extinguished by a fire driver and two firefighters. If an intermediate order of fire occurs, for example, when a residence is being consumed, the whole shift responds. The officer in charge decides how to contain and extinguish the fire. Here again, different inferences could be drawn. The board could have inferred that the officer in charge of the shift exercises independent supervisory judgment in deciding how to control the particular fire. On the other hand, it could have inferred that the containment of these intermediate fires merely involves direction and assignment of work by a skilled employee to less experienced and skilled employees and that such direction and assignment is incidental to the shift commander's technical or professional skill. If the second inference is drawn, the shift commander does not exercise independent judgment as a representative of the city.

The city has emphasized the fact that the captains and lieutenants prepare efficiency reports evaluating the performance of each firefighter or fire driver who serves on his shift. It is true that the city has promulgated "rules and regulations" which govern the employment of all its employees and the ratings received have a bearing on the employees' retention and advancement. Nevertheless, the efficiency reports prepared by the captains and lieutenants are subject to reevaluation by their superiors, and the employee has a right to inspect the efficiency report and request review by a superior officer. The Fire Chief reviews all efficiency reports before they are sent to the City Manager. Discharges and suspensions require the approval of the City Manager. The captains and lieutenants are not "supervisory" employees in the sense that they have authority to hire, fire, lay off or assign overtime to their subordinates. Neither can it be said that they "effectively" exercise such authority.

The city argues that the board's conclusions cannot be sustained because its findings and conclusions are inherently contradictory and because the board applied incorrect criteria in determining the supervisory status of the captains and lieutenants. We reject both contentions. The board's findings leave something to be desired, but they are not inherently inconsistent and they are sufficient to reveal the basis for the board's decision. Neither do we agree with the city's contention that this court ought to be persuaded by the decisions of the N.L.R.B. or by rulings from other jurisdictions which have public-sector bargaining schemes more comprehensive than ours. We may say, however, that we believe the board's conclusion might be supported by applying the principles considered controlling in other jurisdictions, e. g., *Leland Stanford Jr. University*, 194 N.L.R.B. 1210, 79 BNA LRRM 1356, 1361 (1976); *City of Davenport v. Pub. Emp. Rel. Bd.*, 264 N.W.2d 307 (Iowa 1978); *City Manager of Medford v. State Labor Rel. Com'n*, 353 Mass. 519, 233 N.E.2d 310, 315–316 (1968).

Having addressed these points, we state the rules upon which our decision proceeds. We have recounted the facts as the board might have found them. Other inferences could have been drawn, but when an administrative body is the fact-finder and con-

flicting inferences are permissible, that body has a choice, as it does with the credibility of witnesses and the weight to be given conflicting testimony. *Shrock v. Wolfe Auto Sales, Inc.*, 358 S.W.2d 812, 815 (Mo.1962). In all other respects the appeal is clearly controlled by *City of Columbia v. Mo. State Bd. of Mediation*, 605 S.W.2d 192 (Mo.App.1980), and no reason appears for qualifying or questioning that holding. As noted, we review the decision of the board, not the judgment of the circuit court. Because we conclude the board's decision should have been enforced, we have no reason to consider the city's argument that another election should have been ordered. Neither is it necessary to reverse and remand the judgment of the circuit court. Pursuant to Rule 84.14, V.A.M.R., the decision of the board dated January 23, 1979, is ordered enforced.

PREWITT, P. J., BILLINGS and MAUS, JJ., and STOCKARD, Special Judge, concur.