RAYMOND J. McGEE, *d.b.a.* THOMAS P. McGEE & SONS *vs.* LOCAL No. 682 OF THE BROTHERHOOD OF PAINTERS. DECORATORS AND PAPERHANGERS OF AMERICA, A. F. OF L.

JUNE 23, 1944.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

See also 69 R. I. 1.

CAPOTOSTO, J. These are two appeals from a decree of the superior court reversing a decision of the Rhode Island State Labor Relations Board, hereinafter called the board, which decision is dated October 27, 1942 and holds that Raymond J. McGee, hereinafter called the employer, was guilty of unfair labor practice in that he had refused to bargain collectively with Local No. 682 of the Brotherhood of Painters, Decorators and Paperhangers of America, A. F. of L., hereinafter called the union. The unfair labor practice was the alleged violation of subdivision 6, sec. 5, chapter 1066, public laws 1941, as amended by public laws 1942, chapter 1247, entitled the Rhode Island State Labor Relations Act, hereinafter called the act. The appellants are the board and the union.

The decision of the board in the instant case involves three prior hearings and decisions by the board, the first of which, dated August 17, 1942, is specifically referred to in its decision now before us, and the other two were made a part of the present record by the board, at the hearing in the superior court. At that hearing, when the question arose as to whether the record in all three of the prior proceedings before the board were to be considered as part of the record in the case at bar, the board agreed, while the attorney for the union merely said: "I don't believe I can agree to it." No formal objection to such action was made by him, however, nor did he, in any other manner, ask for a ruling by the court on the matter.

The union now insists that, in so far as it is concerned, we should disregard all such prior proceedings and confine our consideration of this case solely to the decision of the board of October 27, 1942 in case 43. This we cannot do. While the union did not expressly agree to the incorporation of the prior proceedings as part of the record in the instant case, it must be held to have waived any objection thereto, or at least to have acquiesced in such action.

The proceedings thus incorporated in the record now before us are known as cases numbered 38, 42 and 43 in the files of the board and will be so identified in this opinion. The decision of the board in the instant case, which was reversed by the superior court, came at the conclusion of a series of controversies between the union and the I. T. U. as to which of the two rival labor organizations was the real representative of the employees for the purpose of collective bargaining with the employer.

It appears that on May 5, 1941, the employer, who employed some twenty men, entered into a collective labor contract with the union. This contract consists of three pages and each page is dated May 5, 1941. The pertinent provisions of the contract are as follows: "Sec. 1. (a) On and after April 1st, 1941 eight (8) hours shall constitute a days work . . . . Sec. 3 *Starting April 1st, 1941* the rate

of wages shall be eighty cents (80c) per hour . . . . Sec. 10 This agreement shall remain in force one (1) year *from the date here of*. Either party contemplating changes at its expiration shall give ninety (90) days notice. The party receiving such notice agrees to call a conference within thirty (30) days upon receipt of same. Sec. 11 Upon expiration when neither party has shown a desire to change as specified, this Agreement shall then remain in force subject to change by either party at any time. Such changes shall be governed by the provisions set forth in Sec. 10 of this Agreement." (Italics ours.)

By letter, dated December 17, 1941, the union notified the employer that the new wage scale for painters in that organization would be one dollar an hour, effectual ninety days from the date of this letter. The raise in wages was thus set by the union to become effective on March 18, 1942, which was within the period covered by the contract. The record before us shows that, following the receipt of this letter, the employer discussed this matter with representatives of the union without reaching an agreement; and that, in April 1942, the business agent of the union demanded that the employer sign a new contract calling for one dollar an hour, which the latter refused to sign, whereupon the union called a strike and the employees quit work on April 13, 1942.

Two days later the I. 'T. U. filed a petition, case 38, requesting the board to hold an election on the ground that it represented the employees for the purpose of bargaining with the employer. The union appeared and intervened. Following a hearing, the board, by its decision of May 18, 1942, dismissed the petition, without prejudice, on the ground that, as the employer had entered into a contract with the union "for a period of one year from April 1941 to April 1942", and as it further appeared that negotiations were then pending for a renewal of such contract, the union "should be permitted to continue negotiations" with the employer.

On May 25, 1942, the employer entered into a contract with the I. T. U. By this time all employees, who formerly belonged to the union, had become members of the I. T. U. On July 20, 1942, the I. T. U. filed another petition, case 42, asking for an election and for certification of representation. This proceeding was, in effect, a petition to reopen case 38 on the ground of a material change of circumstances. A motion by the union to intervene was granted, but a similar motion by the employer was denied. On July 24, 1942 the union filed a petition for certification, case 43, and alleged therein that the employer had refused to negotiate with it. The I. T. U. was allowed to intervene.

These two petitions were heard on August 4, 1942, and a decision was rendered by the board in each case on August 17, 1942. In case 42, the board gave no validity to the employer's contract with the I. T. U. and further held that: "In view of the existence of the automatic renewal clause contract, the Board now finds, that there is no justifiable question or controversy concerning the bargaining representation of the employees of Thomas P. McGee & Sons or any reason for the holding of an election." The board therefore dismissed the petition. In case 43 the board, basing its decision upon "the entire record of the proceedings", in effect found that the employer's contract with the union had been automatically renewed; that the union was the then proper bargaining agent, and that the employer should negotiate with the union respecting the matter in dispute.

The next step in the interlocking proceedings involved in the instant case took place on October 5, 1942, when the union filed a petition with the board, identified as case 44 in its files and the one now actually before us, in which the union alleged that the employer was guilty of unfair labor practice, in that he had refused to negotiate with it. The I. T. U. was not a party in this case. The board, in substance, found that the employer had refused to negotiate with the union, and that, by entering into a contract with

the I. T. U., he had disregarded the board's decision of August 17, 1942, wherein it had designated the union as the sole bargaining agent for the employees. "Upon the basis of the foregoing findings of fact and from the entire record in the proceedings", the board held that the employer had engaged in unfair labor practices and therefore ordered the employer to negotiate with the union in accordance with certain specified directions.

From this decision the employer duly appealed to the superior court, which, after hearing on the entire record hereinbefore summarized, reversed the decision of the board on the ground that in the circumstances of this case the employer had "a legal right to enter into a new labor contract with any person or association or labor body", and entered a decree to this effect. From such decree, the board and the union appealed to this court.

The appellants urge different grounds for their common contention that the superior court erred in reversing the decision of the board in the instant case. The board contends that the contract between the employer and the union was a contract for one year from April 1, 1941 to April 1, 1942; that it was automatically renewed on the last-mentioned date in accordance with the provisions of sec. 11 of the contract; that the employer and the union were negotiating for certain changes in the contract under sec. 10 thereof when the former, in violation of such renewed contract, entered into a contract with the I. T. U.; and that in so doing, the employer was guilty of unfair labor practice within the meaning of sec. 5, subdivision 6 of the act, as amended. The act there provides that it shall be an unfair labor practice for an employer to refuse to bargain collectively with the representatives designated or selected for the purposes of collective bargaining by the majority of the employees in a unit appropriate for such purposes.

The union, on the other hand, concedes that there was no automatic renewal of the contract between the employer and the union. Its contention, as we understand it, is that

as the union was certified in case 43 as the sole bargaining agent for the employees and the employer was ordered by the board to negotiate with that certified agent, and it further appearing that the employer had refused to obey such order, therefore the employer was guilty of unfair labor practice, under the section of the act hereinbefore cited, when he entered into a contract with the I. T. U.

In support of this contention the union argues that the decision of the board in case 43 was a final order from which the employer, as an aggrieved party, should have prosecuted an appeal to the court for final determination; and that, as the employer had failed to protect his interests in this manner, *"Therefore everything to and including that case became res adjudicata and the Superior Court had no legal right to review the order"*, in the instant case. Basing itself on this premise, which it thus stresses, the union concludes that the evidence in case 44 before the board, which is the instant case, clearly shows that the employer had refused to negotiate with the bargaining agent which the board had certified, and that the superior court erred when it reversed the decision of the board now under consideration.

In view of these conflicting contentions, we will consider them separately and in the order above set forth. We cannot agree with the board, as its representative strenuously argued before us and as all of its decisions show by express language or necessary implication, that the contract between the employer and the union was a contract for one year from April 1, 1941 to April 1, 1942, and that such contract was automatically renewed in accordance with the provisions thereof.

The contract is explicit as to the time of its duration. Section 10 clearly states that the contract "shall remain in force one (1) year *from the date here of."* (Italics ours.) It is dated May 5, 1941 and *each* of its three pages has the *same* date. The fact that certain of its terms were made retroactice in their application to April 1, 1941 in no way

changed the period during which the parties agreed that the contract should remain in force. The board was therefore in error when, in case 38, it held that the employer had entered into a contract with the union "for a period of one year from April 1941 to April 1942." This erroneous interpretation of the contract entered into every hereinbefore mentioned decision of the board.

The union violated its clearly expressed contract with the employer when, on December 17, 1941, it notified him by letter that ninety days thereafter he would have to pay his employes, who were then members of the union, wages at the rate of one dollar an hour instead of eighty cents an hour, as the contract provided. This was not a notice of a contemplated change for the purpose of bargaining *at the expiration* of the contract, as provided for in sec. 10 thereof, but it was notice of a wage rate arbitrarily fixed by the union, which was to go into effect within the period covered by the contract.

The board contends that the union's letter to the employer was merely a notice of a contemplated change in the existing contract; that the employer failed to call, in writing, a conference within thirty days after receipt of the letter, as required by sec. 10 of the contract; that he refused to negotiate with the union; that the contract was automatically renewed on April 1, 1942, and that therefore the union continued to be the bargaining agent. We have already expressed our judgment as to the meaning of the letter. Furthermore, the contract does not specify the manner in which a conference shall be called by the employer when a contemplated change in the contract is suggested by the union.

Assuming, however, that the letter was merely what the board construes it to be and that the employer did not, in writing, call for a conference, as the board implies that he should have done, there is no evidence in the record before us to support the board's finding that the employer refused to negotiate with the union respecting the so-called

contemplated change. On the contrary, the evidence is uncontradicted that the employer did in fact confer with the union about such changes, first with some of its representatives and later with its business agent. If it be held that under the contract the employer was required to call, in writing, for such a conference, then this technical objection was waived by the union when its representatives conferred with the employer concerning the matter.

At the hearing before the board in case 38, on May 1 and 6, 1942, Stanley Nicewicz, the then president of the union, testified that the employer met representatives of the union on two or three occasions and discussed the matter with them; that on the morning of April 13th the business agent approached the employer with a written agreement, which agreement the employer refused to sign, and that the men were then ordered off the job by the business agent. At this same hearing the employer testified that he met with three men from the union on the matter, and that when he was asked to sign a new contract he refused to do so.

The proposed new contract was put in evidence by the union. It is dated April 11, 1942. In so far as pertinent, it provides as follows: "Sec. 1 (a) On and after April 1, 1942" a certain number of hours shall constitute a day's work. "Sec. 3 Starting April 1, 1942 the rate of wages shall be one dollar ($1.00) per hour for regular time . . . . Sec. 10 This agreement shall remain in force one (1) year from the date here of. . . . ."

No further negotiations were had by the union and the employer between April 13, 1942, when a strike was called by the business agent of the union, and the date of expiration of the existing contract, May 5, 1942. By this unwarranted action in the premises, the union lost its rights under the contract to an automatic renewal thereof, and all the mutual rights and obligations of the parties under the contract ceased on May 5, 1942. In the circumstances, the employer was thereafter clearly within his rights to enter into a contract with any labor organization that his em-

ployees chose to represent them. This the employer did when, on May 25, 1942, he entered into a contract with the I. T. U., which then apparently represented all his employees. We therefore find that the contention of the board is without merit and that the superior court was not in error in reversing the decision of the board on that ground.

We now come to a consideration of the contention by the union that, because the employer did not prosecute an appeal to final determination from the decision of the board in case 43, all matters, both legal and factual, in cases 38, 42 and 43, were *res adjudicata*, and that in the instant case the only issue before the court is whether the employer was guilty of unfair labor practice by refusing to deal with the union following its selection and designation by the board as the representative of the employees for the purpose of collective bargaining. In our judgment, thie contention is not sound.

The only question before the board in cases 38, 42 and 43 was whether the union or the I. T. U. should be the representative of the employees for the purpose of collective bargaining with the employer. In each of the three cases just mentioned, the proceedings which raised the question of the employees' representative were instituted by the union or the I. T. U. and not by the employer. In case 43 the board certified the union as the bargaining representative of the employees and the employer appealed to the superior court from that certification, whereupon the board challenged his right to such appeal. At the hearing on the question thus raised, counsel for the board contended that the superior court was without jurisdiction to review an order of certification, which contention was sustained by the court and the employer's appeal was dismissed on that ground.

The action of the board on the employer's appeal in case 43 and the effect that it gives to the decision of the superior court in that case, which is directly opposite to the effect claimed by the union, reveal the board's interpretation as

to when an employer is entitled to appeal from an order or a decision of the board under the act. The board apparently entertains the view that, according to the act, an employer has no appeal to the superior court from an order of certification in proceedings instituted by employees or their representatives, and that he can appeal to that court only from a decision holding him guilty of unfair labor practice in disregard of an order of certification.

The declared policy and purpose of the act is to avoid industrial strife and unrest through the medium of collective bargaining by employees with employers. In pursuance of such intent the act gives to employees the right of self-organization and, in the exercise of that right, they may form, join, or assist labor organizations, free from interference, restraint or coercion from any source. As to such matter, it appears to be the intent of the act that the employer shall not be such a party in interest as to warrant his right to appeal from an order of certification. Were he allowed to appeal from such an order, the delay resulting therefrom would necessarily obstruct the prompt settlement of industrial strife and unrest.

The case is quite different, however, when, following an order of certification, the employer is called upon to answer a charge of unfair labor practice in refusing to deal with the designated representative of the employees, and the board finds him guilty of that charge. In these circumstances, which is the case now before us, even the union admits that the employer is a party in interest and that he is entitled to appeal to the superior court for a review of such decision, although here it seeks to defeat the appeal through its contention under discussion.

An order of certification is in the nature of an interlocutory decision, while a finding that the employer has been guilty of unfair labor practice in refusing to bargain with the certified agent is a final decision on the merits. An appeal by the employer in the latter instance brings before the superior court a transcript of the entire record in the pro-

ceedings, including the pleadings, upon which the board based its decision of unfair labor practice. There is no doubt that, according to the act, the findings of the board as to facts, if supported by competent evidence, are conclusive. But a finding of fact by the board, which is not supported by competent evidence or which is based upon an error of law, has no such binding effect. In such circumstances the superior court has jurisdiction to determine the true merits of the case and to modify or set aside, in whole or in part, the decision and order of the board.

After serious consideration of the pertinent provisions of the act, we are unable to agree with the contention of the union. Our construction of the act is that an employer has no right to appeal to the superior court from an order of certification by the board, which was the only proper effect of the board's decision in case 43, but that he has the right to appeal to that court from a decision of the board which finds him guilty of unfair labor practice in refusing to bargain with the union so certified, as he did in the instant case.

We have hereinbefore stated that the controlling question in this case is one of law and not of fact. The order of certification in case 43 was based upon a clear error of law in the construction of the employer's contract with the union. Such error was plainly carried over and made the basis of the board's decision in the instant case. Since the order of certification was founded upon an error of law, the employer's failure to comply with that order will not sustain a finding by the board that he was guilty of an unfair labor practice, as the trial justice correctly held in the case at bar.

The appeals of the board and of the union are denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the superior court for further proceedings.

*Higgins & Silverstein, John R. Higgins,* for employer.

*Edward F. Dwyer, Joseph A. Padway* and *I. B. Padway,* both of Washington D. C., *Irving I. Zimmerman,* for union.

*Francis A. Manzi,* for R. I. State Labor Relations Board.