107 N.J. Super. 150 (1969)
257 A.2d 712
COUNTY OF GLOUCESTER, BOARD OF CHOSEN FREEHOLDERS, PUBLIC EMPLOYER-APPELLANT,
v.
PUBLIC EMPLOYMENT RELATIONS COMMISSION, STATE OF NEW JERSEY, AND TEAMSTERS LOCAL UNION NO. 676, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSMEN AND HELPERS OF AMERICA, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1969.
Decided October 10, 1969.
*151 Before Judges GOLDMANN, LEWIS and MATTHEWS.
Mr. Frederick J. Rohloff argued the cause for appellant (Messrs. Archer, Greiner, Hunter & Read, attorneys; Mr. Charles Lee Harp, Jr. on the brief).
Mr. Theodore A. Winard, Special Counsel, argued the cause for respondent Commission.
*152 Mr. Robert F. O'Brien argued the cause for respondent Union (Messrs. Plone, Tomar, Parks and Seliger, attorneys).
Mrs. Priscilla Read Chenoweth, Deputy Attorney General, argued the cause for Mr. Arthur J. Sills, Attorney General of New Jersey, amicus curiae.
The opinion of the court was delivered by LEWIS, J.A.D.
The County of Gloucester, Board of Chosen Freeholders (herein county) appeals from a "Decision and Direction of Election" of respondent Public Employment Relations Commission (herein Commission) declaring that (1) certain "correction officers" of the county constituted a unit of employees appropriate for collective negotiations, as provided by N.J.S.A. 34:13A-6(d), and (2) the county "correction officers" were not "policemen" within the purview of N.J.S.A. 34:13A-5.3 which precludes policemen from joining an employee organization that admits to membership employees other than policemen.
We granted the Attorney General's motion to appear amicus curiae in an advisory capacity "on a question of general public interest". He argues in support of the county's contention that the officers here involved are "policemen" and may not be represented by respondent Teamsters Local Union No. 676, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (herein union). He also argues, as do the Commission and the union, that the decision under review was an interlocutory order and that the appeal therefrom may not be maintained at this stage of the proceedings. R. 2:2-3(a). The union joins with the Commission in urging that "correction officers" are not "policemen" as contemplated by the Legislature.

The Procedural Issue
The Commission made its determination on August 20, 1969 after a hearing on the union's petition for certification as the exclusive bargaining agent for the Gloucester County *153 correction officers excluding "all supervisors and all other employees." The order of the Commission was subsequently implemented by the scheduling of a secret ballot election to be held on September 12, 1969.
In the interim the county, through its substituted attorneys, requested the Commission to reconsider its Decision and Direction of Election and stay the election. This request was denied and communication thereof was transmitted by telegram dated September 11, 1969, which reads in pertinent part:
* * * The Commission has found insufficient reasons to warrant a reopening of the hearing of May 27, 1969 in which all parties participated fully or a reconsideration of its decision of Aug. 20, 1969. The American Arbitration Association will conduct the election as scheduled * * *.
The county filed its notice of appeal that same day, and, pursuant to R. 2:9-8 ("Temporary Relief in Emergent Matters"), applied for a stay of the election to a single judge of this court, who, after a hearing in chambers, all parties being represented, denied the application for a stay, ordered the returns of the election impounded until futher order of this court, scheduled an accelerated date for oral argument on appeal and fixed a timetable for the filing of briefs and reply briefs.
In challenging the county's right to appeal it is argued that an order for an election by the Commission is but one step in the administrative proceedings, and that a final appealable order does not, and should not, lie until the Commission, after an election and a determination by a majority of votes cast, has certified an elected employee representative. Otherwise, the argument runs, there is a possibility of an overriding judicial obstruction in the administrative processes designed to render quick decisions in "burning representation questions."
We are referred to numerous federal cases for the proposition that representation decisions, under generally recognized *154 principles of labor law, are normally reviewable only where the dispute concerning the correctness of the certification "eventuates in a finding that an unfair labor practice has been committed." Cited authorities include American Federation of Labor v. National Labor Relations Board, 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347 (1940); Boire v. Greyhound Corp., 376 U.S. 473, 84 S.Ct. 894, 11 L.Ed.2d 849 (1964); McCullouch v. Libbey-Owens-Ford Glass Co., 131 U.S. App. D.C. 190, 403 F.2d 916 (1968); Modern Plastics Corp. v. McCullouch, 400 F.2d 14 (6 Cir. 1968). But cf. Leedom v. Kyne, 358 U.S. 184, 188, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), and City Manager of Medford v. State Labor Rel. Com'n, 353 Mass. 519, 233 N.E.2d 310, 314 (Mass. Sup. Jud. Ct. 1968).
We find those arguments and their supportive rationale unpersuasive. The Commission's Rules and Regulations and Statement of Procedure (1969), § 19:15-6, provides specifically that, "An order denying a request for review shall constitute the final administrative determination of the Commission." Additionally, section 19:11-19 (f) reads:
Within five (5) days after the tally of ballots has been furnished, any party may file * * * copies of objections to the conduct of the election or conduct affecting the results of the election * * *. (Emphasis added)
Thus it appears that the issue of whether the correction officers were policemen was resolved and determined by the Commission by an order which it refused to review in advance of the election and which arguably could not be raised as a bar to a certification of the election results. Moreover, practical considerations may compel judicial review prior to an election, particularly in circumstances where a statutory proscription has been called into question.
In the recent New York case of Civil Service Employees Ass'n v. Helsby, 31 A D.2d 325, 297 N.Y.S.2d 813 (Sup. Ct. App. Div.), affirmed 24 N.Y.2d 993, 302 N.Y.S.2d 822, 250 N.E.2d 230 (Ct. App. 1969), the Appellate *155 Division held that under the law of that state, declaring that an appeal could only be taken from a final judgment or determination, a certification of representation in a labor dispute is not a prerequisite to judicial review. The court said:
Judicial review at this time may avoid costly and time-consuming intermediate procedures. There would be no economy in deferring the question of the correctness of the Board's determination until after all the proceedings required to ascertain and establish the employee representative * * *. Resolution of the issues in this proceeding at the earliest possible moment is in the best interest of the State and its employees. Unless there is some statutory prohibition, there is no reason to defer judicial review. [297 N.Y.S.2d at 817]
On review by the Court of Appeals there was a per curiam affirmance, with the comment: "The public importance of the issues raised in the proceedings requires prompt adjudication." 302 N.Y.S.2d at 823, 250 N.E.2d at 231.
In any event if we entertained doubt as to the appealable finality of the Commission's determination, we would resolve that doubt by considering the county's notice of appeal as a motion for leave to appeal and would grant it in order to reach promptly the merits of the public issues involved. R. 2:2-3(b).

The Status of Correction Officers
The critical problem posed on this appeal is whether the decision of the Commission, that county correction officers are not policemen and therefore may be represented by the Teamsters Union, is consistent with the intendment of N.J.S.A. 34:13A-5.3 which provides that "no policeman shall have the right to join an employee organization that admits employees other than policemen to membership."
The county asserts that the term "policemen" should include anyone who exercises police functions. Similarly, the Attorney General argues that the statutory designation "policemen" encompasses those who possess police powers. The Commission and union reassert the rationale and conclusion *156 of the Commission, that because guards at the correctional institution do not customarily exercise police functions or authority, they are not policemen.
Within our limited scope of review, as enunciated in Campbell v. Dept. of Civil Service, 39 N.J. 556, 562 (1963), we will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute. Our concern is with the latter criterion. See also Moorestown Tp. v. Armstrong, 89 N.J. Super. 560, 565 (App. Div 1965), certif. den. 47 N.J. 80 (1966); Amodio v. Civil Service Comm'n, 81 N.J. Super. 22, 30 (App. Div. 1963). Accord, United States v. First City Nat. Bank of Houston, 386 U.S. 361, 366-367, 87 S.Ct. 1088, 18 L.Ed.2d 151 (1967).
We are unaided by any specific explication or definition of "policemen" in the legislative history of the statute in question, and therefore turn to the "most universal and effectual way of discovering the true meaning of a law, when the words are dubious," which is, "by considering the reason and spirit of it; or the cause which moved the legislator to enact it." 1 Blackstone Commentaries 61 (Lewis ed. 1922); McCaffrey, Statutory Construction, § 5, p. 13 (1953). In our approach to a construction of the enactment we focus upon statutes in pari materia and related acts, Brewer v. Porch, 53 N.J. 167, 174 (1969); Lynch v. Borough of Edgewater, 8 N.J. 279, 286 (1951), and our pertinent decisional law. We also examine analogous legislation of other jurisdictions and their judicial interpretations. See 3 Sutherland, Statutory Construction (3d ed. 1943), § 5902, p. 129; 50 Am. Jur., Statutes, § 323, p. 315 (1944).
A significant statute, N.J.S.A. 2A:154-4 (effective approximately three months before the petition for certification was filed in the instant matter) apparently was not argued before, nor considered by, the commission. It declares that:
*157 All correction officers of the State of New Jersey * * * shall, * * * in addition to any other power or authority, be empowered to act as officers for the detection, apprehension, arrest and conviction of offenders against the law. L. 1968, c. 427, § 1, eff. Jan. 27, 1969.
The quoted language is unambiguous and plainly vests in correction officers specific powers and duties commonly exercised by the police. When that statute is read with the aforementioned provision of N.J.S.A. 34:13A-5.3, we think it to be apparent that the Legislature was seriously concerned with preventing law enforcement officers, authorized to make detections, apprehensions and arrests, from joining an employees' union which might place them in a conflicting position and create circumstances for possible divided loyalty or split allegiance. Compare the analogous policy fostered by 29 U.S.C.A. § 159(b), which precludes guards from joining a labor union if that organization includes member employees other than guards. National Labor Relations Bd. v. American Dist. Tel. Co., 205 F.2d 86, 89 (3 Cir. 1953).
The policeman of today has developed from the watchman of early days; he was unknown at common law. In current usage, however, the term "policeman" is given a broad meaning. See 16 McQuillin, Municipal Corporations (3d ed rev. 1963), § 45.06, pp. 640-641. In Levine v. State, 110 N.J.L. 467, 469 (E. & A. 1933), Justice Heher for the court approvingly referred to the following paragraph from 2 Cooley's Constitutional Limitations (8th ed. 1927), p. 1223:
The police of a State, in a comprehensive sense, embraces its whole system of internal regulation, by which the State seeks not only to preserve the public order and to prevent offenses against the State, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others.
By statute jailkeepers are under the control of the county sheriff, and they possess the same power and authority as *158 constables. N.J.S.A. 30:8-18. The position of a constable has been held to be that of a "conservator of the peace, civil officer, and ministerial officer of the courts." Caldaro v. Ferber, 39 N.J. 314, 318 (1963). And, as stated by the Supreme Court of Missouri, "Certainly, the actual keeping and custody of prisoners confined in a jail is the performance of an inherent and naked police function." State ex rel. Priest v. Gunn, 326 S.W.2d 314, 325 (Mo. Sup. Ct. 1959). Contra, City of Atlanta v. Bailey, 70 Ga. App. 711, 29 S.E.2d 514 (Ct. App. 1944), and In re Ronny, 40 Misc.2d 194, 242 N.Y.S.2d 844 (Family Ct. 1963), which cases considered correctional guards not to be policemen because (unlike their status in New Jersey) they were unauthorized to make arrests.
Here the Commission recognized that correction officers are authorized to exercise police powers but concluded, as it did, upon findings that the county correction officers were prison guards, "not armed" and "not called upon to exercise the police powers conferred." The legislative objective cannot be frustrated by such narrow reasoning. Nonrecourse by guards, in the past, to their reserved authority is no basis for assuming that they may not, in the future, be required to exercise such authority in order to prevent violations of the law.
Moreover, the fact that county correction officers are unarmed does not negate their statutory right and duty, in appropriate circumstances, to detect, apprehend and arrest. Cf. State v. Grant, 102 N.J. Super. 164 (App. Div.), certif. den. 53 N.J. 62 (1968), wherein this court, in a proceeding that involved the prosecution of a prisoner for assault and battery on a correction officer on duty at the Essex County Penitentiary, stated that "overseeing the custody and punishment of law violators is as much a part of law enforcement as undertaking the detection and apprehension of such violators." 102 N.J. Super., at 168.
On the record before us we hold that the "Decision and Direction of Election" by the Commission is incompatible with the reason and spirit of N.J.S.A. 34:13A-5.3 in that *159 it violated an implicit legislative policy. The Commission erred when it determined that the county correction officers were not policemen within the purview of that statute and that they could join a union which admits employees other than policemen to membership. In view of these conclusions it is unnecessary, for purposes of this opinion, to decide whether the county correction officers constitute an appropriate unit for collective negotiations.
Accordingly, we reverse the Commission and vacate the election held on September 12, 1969. The order of this court impounding the results of the election will be continued until further order of court.