LINCOLN COUNTY MEMORIAL HOSPITAL, Appellant,

v.

MISSOURI STATE BOARD OF MEDIATION, Respondent.

No. KCD 29042.

Missouri Court of Appeals, Kansas City District.

April 4, 1977.

Peter J. Grewach, E. Rex Bradley, Troy, for appellant.

John C. Danforth, Atty. Gen., Christopher R. Brewster, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, C. J., and SHANGLER, DIXON, SWOFFORD, WASSERSTROM, SOMERVILLE and TURNAGE, JJ.

WASSERSTROM, Judge.

Lincoln County Memorial Hospital appealed under Section 105.525 (all statutory references herein being to RSMo 1969 unless otherwise noted) from a determination by the Missouri State Board of Mediation that all registered nurses of the Hospital, with one exception, constituted an appropriate unit for collective bargaining. From an affirmance by the circuit court of the Board's determination, the Hospital again appeals to this court.

On March 26, 1975, the Missouri Nurses Association petitioned the Board to resolve the issues of (a) the appropriate bargaining unit for nurses at the Hospital and (b) majority representation by the Association for the collective bargaining unit. The Board held a hearing on June 26, 1975, at which the Hospital and the Association both introduced evidence. The Hospital's evidence was to the effect that it had approximately 222 employees of whom 70 worked part-time; approximately 122 of the employees, including 29 registered nurses, staffed the Department of Nursing; the Hospital had designated ten of those registered nurses with supervisory titles; these "supervisors" perform certain supervisory functions including recommendations having effective weight respecting promotions, transfers, discipline and discharge; and they are paid additional compensation for the supervisory position.

The Association admitted that Mrs. Judith King, as Director of Nursing, occupies a supervisory capacity and that she therefore should be excluded from the unit, but the Association strongly denied that any of the other nine "supervisory" nurses in truth should be so classified. The evidence offered by the Association tended to prove that all of the registered nurses including the "supervisors" performed general nursing duties; that the supervisory duties relating to management are relatively minor; and that all recommendations of a supervisory nature made by the nine "supervisors" in question were subject to the final judgment of Mrs. King.

On August 26, 1975, the Board issued its Opinion, Findings and Orders, in which it found that all of the registered nurses with the exception of Mrs. King constituted an appropriate bargaining unit and directed that an election be held within that unit not later than October 1, 1975. On September 11, 1975, the Hospital filed its petition for review in the circuit court, and at the Hospital's request the court issued an order on September 12, 1975, staying the election pending judicial review.

The circuit court issued its order affirming the Board on July 7, 1976, from which the Hospital filed the present appeal on September 1, 1976. Pursuant to the Hospital's application, this court issued its order on October 25, 1976, further staying the holding of an election pending determination of this appeal. Because of the stay

orders mentioned, the election order by the Board on August 26, 1975, has never yet been held.

■ On the present appeal, the Hospital assigns six points of error, the most serious of which complains of the inclusion in the bargaining unit of the nine registered nurses whom the Hospital insists are supervisors or managerial personnel. However, none of the errors assigned by the Hospital can be reached on this appeal unless this court has proper jurisdiction. That in turn depends on whether the Board's determination of the appropriate bargaining unit constitutes an appealable order. If it does not, then the circuit court lacks jurisdiction of the subject matter. *National Ass'n of Women's and Children's Apparel Salesmen, Inc. v. F. T. C.*, 479 F.2d 139, 144, footnote 9 (5th Cir. 1973); *Bd. of Tr. of Mem. Hosp. of Fremont County v. N. L. R. B.*, 523 F.2d 845 (10th Cir. 1975); *State Board of Registration for Healing Arts v. Masters*, 512 S.W.2d 150, 1. c. 159 (Mo.App.1974).

■ And the want of jurisdiction by the circuit court would in turn deprive this court of the power to make any decision on the merits. *Shepler v. Shepler*, 348 S.W.2d 607, 609 (Mo.App.1961); *Allen v. State Department of Public Health and Welfare*, 479 S.W.2d 183, 186 (Mo.App.1972); *Swetnam v. U. S. By-Products Corp.*, 510 S.W.2d 829, 831 (Mo.App.1974). Even though this jurisdictional issue has not been raised by the parties, it is the duty of this court to consider the problem sua sponte. *Stone v. Stone*, 393 S.W.2d 201, 204 (Mo.App.1965); *Engel Sheet Metal Equipment, Inc. v. Shewman*, 298 S.W.2d 434, 435 (Mo.1957); *Conner v. Herd*, 429 S.W.2d 333, 334 (Mo. App.1968); *P. I. C. Leasing, Inc. v. Roy A. Scheperle Construction Co., Inc.*, 489 S.W.2d 219 (Mo.App.1972).

The question of whether an appeal lies from an administrative determination of the appropriate bargaining unit, prior to determination of majority representative status, is not answered by the wording of § 105.525, which is ambiguous in this regard.[1] The same question has given rise to much litigation in other jurisdictions, with conflicting results. The rule followed uniformly in the federal courts under the National Labor Relations Act is that such an administrative determination is only interlocutory and is not separately appealable. Except in extraordinary situations, the aggrieved party must await the completion of the administrative process by an election certification and an order compelling the employer to enter into collective bargaining. This result is reached partially on the basis of the statutory language granting the right of appeal, contained in 29 U.S.C.A. § 160. However, these decisions, more importantly for our purposes, rest also in part upon grounds of public policy. Thus in a leading case, *American Federation of Labor v. N. L. R. B.*, 308 U.S. 401, 1. c. 409, 60 S.Ct. 300, 304, 84 L.Ed. 347 (1940) the Supreme Court discussed and relied upon Congressional history to show a legislative purpose to eliminate delay which had occurred under the previous federal law (Public Resolution 44) and which had permitted judicial review at the stage of the determination of the appropriate bargaining unit. In this connection, the Supreme Court quoted the committee report as follows:

" 'Weaknesses in Existing Law. * * (6) *Obstacles to elections.*—Under Public Resolution 44, any attempt by the Government to conduct an election of representatives may be contested ab initio in the courts, although such election is in reality merely a preliminary determi-

---

1. Section 105.525 grants right of appeal as follows: "Issues with respect to appropriateness of bargaining units and majority representative status shall be resolved by the state board of mediation. In the event that the appropriate administrative body or any of the bargaining units shall be aggrieved by the decision of the state board of mediation, an appeal may be had to the circuit court of the county where the administrative body is located or in the circuit

court of Cole County. * * * " § 536.100 and Rule 100.03, governing judicial review of administrative rulings in contested cases generally, provide that the review be of "a final decision." The decisions from other jurisdictions hereinafter referred to generally address the question of whether determination of the appropriate bargaining unit, taken alone, constitutes "a final decision" of the administrative agency.

nation of fact. This means that the Government can be delayed indefinitely before it takes the first step toward industrial peace. After almost a year not a single case, in which a company has chosen to contest an election order of the Board, has reached decision in any circuit court of appeals.' Sen.Rep. No. 573, Committee on Education and Labor, 74th Cong., 1st Sess., pp. 5, 6.

"After referring to the procedure for review under Public Resolution 44, the House Committee declared: 'The weakness of this procedure is that under the provision for review of election orders employers have a means of holding up the election for months by an application to the circuit court of appeals. * * * At the present time 10 cases for review of the Board's election orders are pending in circuit court of appeals. Only three have been argued and none have been decided.' House Rep. No. 1147, Committee on Labor, 74th Cong., 1st Sess., p. 6."

So also, in another leading case, *Boire v. Greyhound Corporation,* 376 U.S. 473, l. c. 477–478, 84 S.Ct. 894, l. c. 897, 11 L.Ed.2d 849 (1964), the Supreme Court made the following observations concerning the public policy involved:

"That this indirect method of obtaining judicial review imposes significant delays upon attempts to challenge the validity of Board orders in certification proceedings is obvious. But it is equally obvious that Congress explicitly intended to impose precisely such delays. At the time of the original passage of the National Labor Relations Act in 1935, the House Report clearly delineated the congressional policy judgment which underlay the restriction of judicial review to that provided for in § 9(d):

'When an employee organization has built up its membership to a point where it is entitled to be recognized as the representative of the employees for collective bargaining, and the employer refuses to accord such recognition, the union, unless an election can promptly be held to determine the choice of rep-

resentation, runs the risk of impairment of strength by attrition and delay while the case is dragging on through the courts, or else is forced to call a strike to achieve recognition by its own economic power. Such strikes have been called when election orders of the National Labor Relations Board have been held up by court review.' "

The same policy of furthering labor peace by not permitting delays in elections is reiterated in *Bd. of Tr. of Mem. Hosp. of Fremont County v. N. L. R. B., supra,* and in *Bishop v. N. L. R. B.,* 502 F.2d 1024, 1027 (5th Cir. 1974).

A number of state courts in the application of state labor relations statutes have followed the above federal rule. *City Manager of Medford v. State Labor Relations Commission,* 353 Mass. 519, 233 N.E.2d 310 (1968); *Worcester I. T. I. Instructors Ass'n v. Labor Relations Commission,* 357 Mass. 118, 256 N.E.2d 287 (1970); *Harrison v. Labor Relations Commission,* 363 Mass. 548, 296 N.E.2d 196 (1973); *Jordan Marsh Co. v. Labor Relations Commission,* 312 Mass. 597, 45 N.E.2d 925 (1942); *Town of Windsor v. Windsor Police Department Employees Ass'n,* 154 Conn. 530, 227 A.2d 65 (1967); *Southeast Furniture Co. v. Industrial Commission,* 100 Utah 154, 111 P.2d 153 (1941); *McGee v. Local No. 682,* 70 R.I. 200, 38 A.2d 303 (1944); *Klamath County v. Laborers Int'l. Union of N. A., Local No. 915,* 534 P.2d 1169 (Or.App.1975). The opinion last cited typically holds:

"Since (1) the designation of an appropriate bargaining unit is but one step in the process of certifying a bargaining agent with whom the employer is obligated to bargain, (2) several other actions by PERB are necessary to complete the process, and (3) the designation could be of no effect if the employes [sic] vote for no representation, we hold that the designation of an appropriate bargaining unit is not a 'final order' as the term is used in ORS 183.480."

On the other hand, New York, Minnesota and New Jersey have declined to follow the above approach and instead hold that the

administrative determination of the appropriate bargaining unit does constitute a final order which is subject to immediate and separate judicial review. The leading case so holding is *Civil Service Employees Association v. Helsby,* 31 A.D.2d 325, 297 N.Y. S.2d 813 (1969), aff'd by a sharply divided vote of the New York Court of Appeals, 24 N.Y.2d 993, 302 N.Y.S.2d 822, 250 N.E.2d 230 (1969). Other cases following the lead of that case are: *Wakshull v. Helsby,* 35 A.D.2d 183, 315 N.Y.S.2d 371 (1970); *Minnesota State College Board v. Public Employment Relations Board,* 228 N.W.2d 551 (Minn.1975); *County of Gloucester v. Public Employment Relations Commission,* 107 N.J.Super. 150, 257 A.2d 712, 714 (1969). See also the *Pennsylvania Labor Relations Act,* 43 P.S. § 211.9, applied in *Pennsylvania Labor Relations Board v. Butz,* 411 Pa. 360, 192 A.2d 707 (1963).

■ In determining which of these opposing views should be adopted in Missouri, the most persuasive factor is the public policy reflected in the United States Congressional debates. The potential for calculated stalling of collective bargaining by dilatory tactics, which led Congress to eliminate separate judicial review of the determination of an appropriate bargaining unit, is well illustrated in this very case. By the time this opinion is handed down, it will be more than two years since the Association filed its petition before the Board and there still has not been any certification of a bargaining representative, much less the commencement of any negotiations between the parties. Such a long frustration of the employees' right of collective bargaining is simply unfair. Moreover, the Missouri General Assembly, like the Federal Congress and the legislatures of many other states, has concluded that collective bargaining by public employees serves the public interest by being conducive to peaceful employment relationships in the public sector. Achievement of this public policy requires expeditious completion of the administrative process, and this can best be done by adoption of the federal rule requiring that the entire administrative process be terminated before judicial review can become operative.

■ The adoption of this rule will also harmonize with the general principle prevailing in this state as to what constitutes an appealable order. Only one which disposes of all the issues qualifies. *Spires v. Edgar,* 513 S.W.2d 372 (Mo. banc 1974); *P. I. C. Leasing, Inc. v. Roy A. Scheperle Construction Co., Inc., supra; Laclede Gas Co. v. Solon Gershman, Inc.,* 539 S.W.2d 574 (Mo.App.1976). The reason for this principle is expedition of judicial business so that one appeal will cover all aspects of a case, rather than to permit successive piecemeal appeals. The same principle should apply, and with even more reason, in this labor relation situation.

Indeed, the adoption of this rule causes even less difficulty in Missouri than in the federal arena and in states having statutes closely patterned after the federal labor relations statute. The federal statute contains prohibition against unfair labor practices and judicial review of all representation questions is postponed until such time as the administrative board issues an unfair labor practice order. Then all questions between the parties, including the determination of the appropriate bargaining unit, are reviewed as part of the unfair labor practice case. The Missouri statute, § 105.-500 et seq., contains no provision dealing with unfair labor practices and the entire administrative procedures are completed just as soon as the Board of Mediation has held an election and certifies the collective bargaining representative. Judicial review can therefore appropriately begin in Missouri at that time, a point which is much earlier than is permissible under the federal and similar state legislation.

Adoption of the federal rule does not foreclose the possibility that in a very unusual case, judicial review might be appropriate even before the holding of an election. The federal courts and the courts of the states following the federal rule do permit such exceptions in extraordinary circumstances. *Boire v. Greyhound Corporation, supra; Jordan Marsh Co. v. Labor*

*Relations Commission, supra; Bays v. Miller,* 524 F.2d 631 (9th Cir. 1975). The adoption of the federal rule will therefore leave ample flexibility for special situations.

Although the jurisdictional defect discussed above in itself precludes any decision on the merits at this time, mention should be made of one further matter, namely the unsatisfactory nature of the findings of fact which were made by the Board. The Board findings, taken as a whole, decided that the "community of interest" necessary under § 105.500(1) was fixed as a matter of law by virtue of the provisions of Chapter 335 which regulates registered nurses. The Board repeatedly so declared throughout its findings of fact and particularly in the following portions: "the Board interprets and finds that the Legislature, itself, by its legislative enactment, has invested R.N.s with '*a clear and indentifiable* [sic] *community of interest*'. * * * It is a matter of statutory law. The Board should not take issue with the Legislature as to the community of interest enjoyed by R.N.s. They are a group who have an identity imposed upon them by statute. * * * The applied term 'supervisor' or the actual fact of rendering so-called supervisory services cannot alienate the registered nurses in this proceeding from their identification by the Missouri Legislature. Indeed their employer cannot so alienate them—the fact that he calls them 'supervisors' or invests them with so-called 'management' chores, notwithstanding." (emphasis by the Board)[2]

The Attorney General, who appears in this court on behalf of the Board, makes no attempt to justify the quoted findings. Rather the Attorney General in his brief takes a position which is in almost flat contradiction to the Board's position disclosed in its findings. The brief states: "It would, of course, follow that supervisory employees who were in truth and fact 'supervisors', and who were shown to possess a greater community of interest with their employer than they did with their fellow employees, would be excluded from any employee bargaining unit." The Attorney General then makes mention of seven factual criteria which have been developed by the Wisconsin Employment Relations Commission and argues that the nine nurses in question in this case would qualify as nonsupervisory under the Wisconsin criteria. The Attorney General's brief summarizes its argument as follows: "The record evidences activity-related as opposed to employee-related supervision, small numbers, close interaction between supervisors and staff, limited supervisory authority, and an absence of meaningful pay differentials."

■ The argument submitted by the Attorney General has considerable appeal. However, argument by counsel in the brief, no matter how persuasive, cannot adequately substitute for missing findings which the Board failed to make. A reading of the findings which were made by the Board does not disclose any adoption of the Wisconsin criteria nor does the Board make any finding that the evidence of this case fulfills those criteria or any other of a similar nature.[3] Absent appropriate findings of fact, the Board's determination cannot stand. *Iron County v. State Tax Commission,* 480 S.W.2d 65 (Mo.1972); *Century State Bank v. State Banking Board of Missouri,* 523 S.W.2d 856 (Mo.App.1975); *Glasnapp v. State Banking Board,* 545 S.W.2d 382 (Mo.App.1976); *Stewart v. Board of Education of Ritenour Consol. Sch. Dist.,* 538 S.W.2d 765 (Mo.App.1976).

On the release of these proceedings from this mistaken attempt at judicial review, the Board may very well want to reopen the record for the purpose of making new and additional findings of fact. By so doing, the Board can very possibly avoid an

---

**2.** This reasoning by the Board seems inconsistent with its agreement to the exclusion from the unit of Mrs. King, who is also a registered nurse.

**3.** The closest that the Board came to doing so in its finding of fact was the statement that the registered nurses at this hospital "spent approximately 80% of their working hours directly administering to the health care of the patient, under supervision of the doctors." A careful reading of all the evidence fails to show any evidentiary source for that finding.

extra appeal with a consequent vast amount of wasted time and effort by the parties, the Board and the courts. Of course, the Board may at the same time take additional evidence if it deems such a course necessary or desirable.

For the reasons stated, this appeal is dismissed with directions to the trial court to vacate its judgment and to dismiss as premature the appeal taken by the Hospital from the Board's orders dated August 26, 1975.

All concur.