**RAY NEAL DISTRIBUTORS, INC., Appellant,**

v.

**The LABOR & INDUSTRIAL RELATIONS COMMISSION of Missouri and Missouri Division of Employment Security, Respondents.**

**No. KCD 29087.**

Missouri Court of Appeals, Kansas City District.

Dec. 27, 1977.

P. Terence Crebs, St. Louis, for appellant.

Rick V. Morris, Jefferson City, for respondent Missouri Div. of Employment Security.

Charles B. Fain, Jefferson City, for respondent Labor and Industrial Relations Com'n of Missouri.

Before TURNAGE, P. J., and WASSERSTROM and SOMERVILLE, JJ.

WASSERSTROM, Judge.

The question for determination in this case is whether certain individuals doing work under contracts with Ray Neal Distributors, Inc., are in "employment" so as to subject Ray Neal to the Missouri Employment Security Law and thereby make it liable for unemployment compensation contributions. Ray Neal contends that these individuals are all independent contractors. A deputy of the Division of Employment Security made an administrative determination to the contrary. Pursuant to Ray Neal's appeal, a hearing was held before an Appeals Tribunal which affirmed the deputy. An application for review was denied by the Labor and Industrial Relations Commission, thereby adopting the order of the Appeals Tribunal. Ray Neal thereupon appealed to the circuit court which affirmed the Commission. Ray Neal now further appeals to this court. We reverse and remand.

Ray Neal is in the business of furnishing a variety of services as follows: (1) franchise services through dealers; (2) maid services in homes; (3) post construction cleanup work on newly constructed buildings; (4) cleaning of offices and a few churches; (5) tile stripping and sealing of floors and carpet cleaning; and (6) window washing and other general cleaning in residences. No claim has ever been asserted by the Commission that the dealers furnishing franchise services are employees of Ray Neal. Further, the Commission has affirmatively ruled that the individuals performing maid service are excluded under Section 288.034.12(2).[1] Therefore no attention need be given to the first and second categories of workers listed above.

With respect to the workers doing post construction cleanup, window washing and general housecleaning, the facts are as follows. Ray Neal solicits and obtains contracts from the building owner to do the work. Then Ray Neal advertises for workers. When an individual responds to the advertisement and indicates willingness to do this type of work, Ray Neal obtains the worker's signature to a "Sub-Contractor Agreement" outlining the nature of the relationship that shall exist between the parties. The standard agreement provides in significant part as follows:

---

1. This and all other statutory references are to RSMo 1969.

"1. I am to be paid on each unit cleaned rather than an hourly wage. When there are two or more people cleaning the same unit, monies will be divided between all parties.

2. Units must be thoroughly cleaned as per check list in order to pass customer's inspection. Should unit fail to pass inspection, I agree to reclean same without additional compensation *or* forfeit monies due me to the party that does reclean the unit to the customer's satisfaction.

3. I understand monies due me will be mailed on or near the 18th of the month, following the work performance *providing* payment has been received from the client. Exception would be in cases where checks have been withheld for damages or unsatisfactory work."

Most of the individuals who are so obtained and who sign these contracts have other jobs and do this cleaning work on an extra part-time basis.

After getting the worker's agreement, Ray Neal undertakes to get the worker to accept a particular assignment. The worker is free to accept or reject an assignment as he sees fit. If the worker accepts the assignment, he reports with his own tools and equipment to the job site where he comes under the supervision of the customer. In the case of post construction cleanup, there is a superintendent of the customer on the job who "is strictly in charge." No one from Ray Neal goes out to the job site to see how the worker has performed and "nobody from Ray Neal Distributors, Inc. has anything to do with that approval." At the conclusion of the job, the customer mails payment to Ray Neal, who in turn makes payment of the agreed amount to the worker. On the post construction cleanup jobs, the worker receives approximately 60 to 75% of the amount paid by the customer.

Office and church cleaning jobs are generally done by the same individuals who do post construction cleanup and generally follows the same procedural routine, except that the office and church cleaning is on a more continuous basis. There cleaning jobs are generally done on weekends, and the worker can set his or her own schedule within a particular weekend. On this type of job, it sometimes happens that the customer becomes dissatisfied with the worker who has been assigned by Ray Neal. In such instances, Ray Neal tries to get the customer to let it change the personnel assigned rather than to completely discontinue the Ray Neal service.

The carpet cleaning and tile floor stripping and sealing proceeds also along the same general lines already outlined. The principal difference in the case of carpet cleaning is that certain machines are required which Ray Neal owns and supplies to the workers.

The issue in this case of whether the workers in question are "employees" or "independent contractors" is governed by Section 288.034.5 which provides:

"Irrespective of the usual tests for determining the existence of the independent contractor relationship as at common law, service performed by an individual for wages shall be deemed to be employment subject to this law unless it is shown to the satisfaction of the division that

(1) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

(2) Such service is either outside the usual course of the business for which service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

(3) Such individual is customarily engaged in an independently established trade, occupation, profession or business."

Responsive to that statutory test, the Commission found:

"Since Ray Neal made the work assignments and could change assignments in the event of unsatisfactory work, the

Referee finds that these workers were not free from the control of Ray Neal in the performance of their work. The Referee further finds that the services performed by these workers were in the usual course of business of Ray Neal. Therefore, the Referee finds that since all three tests provided in Section 288.034.5 were not met with respect to workers engaged in post-construction cleanup, office cleaning, church cleaning, carpet cleaning and tile stripping, that these workers performed services for wages or under a contract of hire for Ray Neal since March 1972."

The Commission's finding with respect to control by Ray Neal over the workers cannot stand. That ultimate finding rests on subsidiary findings that Ray Neal had the right to make work assignments and change the assignments in the event of unsatisfactory work. As to the post construction cleanup, carpet cleaning and tile stripping, and window washing and general cleaning of homes, there was no evidence of any change of work assignments by Ray Neal once the original assignment was made. In the nature of these jobs, there would be little occasion for such a change, since each job was isolated and of only a short temporary duration during which time the customer himself would be in close charge. All that remains with respect to these categories is that Ray Neal did make the original assignment. As to this, the evidence shows that the worker is free to accept or reject the assignment and that rejections often occurred. The mere offer of a work assignment, which can be accepted or rejected by the worker, hardly adds up to "control" on the part of Ray Neal.

With respect to the office and church cleaning, Ray Neal did on occasion terminate the worker at a particular location and switch a different worker to that assignment. The occasion for this to happen would be when a customer became dissatisfied with the service being rendered and Ray Neal would switch workers in order to try to save the contract with the customer. This switching of a worker off of a particular job does not signify "control" in Ray Neal, but rather bespeaks control on the part of the customer. At most, Ray Neal has control only to the extent of terminating an assignment which otherwise would be taken by the customer out of the hands of both Ray Neal and the worker.

In its brief, the Commission tries to change holds and argues that the issue is not whether Ray Neal exercised control over the workers but whether Ray Neal "has the right to control the individuals." If recourse is to be had to anything outside of the actual working operations shown by the evidence, such additional reference can only be to the written contract between Ray Neal and each worker. This standard contract makes it quite clear that it is the customer, not Ray Neal, who has the right of control. Paragraph 2 provides that all cleaning must be "per check list in order to pass *customer's* inspection" and that payment depends upon cleaning "to the *customer's* satisfaction." There is no evidence that Ray Neal ever prepared any check list mentioned in Paragraph 2, and the fair inference from the record as a whole is that the check list for each job is that of the particular customer. Nowhere in this contract does Ray Neal receive the right to specify details of the work to be done, to supervise the quality of the performance, or in any other way to control the work by the worker. Rather, the contract contemplates supervision and control by the customer of each particular job.

The Commission fares no better with respect to the second statutory test relating to the type and place of work. In order to meet this test, Ray Neal had to prove *either* that the services performed by the workers in question were outside the usual course of Ray Neal's business, *or* that the service was performed outside of all of the Ray Neal places of business. Ray Neal does not pretend that these services were outside the usual course of its business, but it does vigorously contend that the evidence shows that all service was performed outside of any place of business of it. To answer this, the Commission is forced to the farfetched argument in its brief that Ray Neal "must

send workers out to the buildings and offices. And it is at these sites that the Appellant actually operates its business. These sites *are* the Appellant's places of business." The quoted argument is not supported by any finding made or adopted by the Commission; and if such a finding had been made, it would have been too unrealistic to receive judicial approval.

There remains for consideration the third and final part of the statutory test which requires that for a worker to be an independent contractor he must be "engaged in an independently established trade, occupation, profession or business." The Commission in its brief before this court argues that "[t]he facts of this case do not show that the individuals in question were operating their own businesses apart and independent of the Appellant." That may be quite true; but the trouble is that neither the Appeals Tribunal nor the Commission made any finding in this respect. As stated by this court in *Lincoln County Memorial Hospital v. Missouri State Board of Mediation*, 549 S.W.2d 665, l.c. 670 (Mo.App.1977), argument by counsel in the brief, no matter how persuasive, cannot adequately substitute for missing findings which the administrative agency failed to make.

For sake of completeness, mention should be made of one further matter. Ray Neal introduced evidence to show that one Keith Rudolph made application for unemployment compensation and showed Ray Neal as his former employer, but that said claim was denied by the Missouri Division of Employment Security for the reason that "the claimant was self-employed." However, there is no evidence in the record to show what kind of work Rudolph did or what kind of special circumstances may have surrounded it. In any event, the rejection of Rudolph's claim cannot be binding in the present proceeding.

The judgment is reversed and this cause is remanded to the circuit court with instructions to remand the proceedings to the Commission for the purpose of giving it opportunity to make findings as to whether the workers in question were engaged in an independently established trade, occupation, profession or business.

All concur.